48 F.3d 1222
NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Jacenty S. DOMANSKI, Defendant-Appellant.
 No. 94-2629.
 United States Court of Appeals, Seventh Circuit.
 Argued Jan. 25, 1995.
Decided March 2, 1995.
 
 Before PELL, FLAUM and MANION, Circuit Judges.
 
 ORDER
 
 1
 Jacenty S. Domanski was convicted for knowingly possessing two counterfeit nonimmigrant visas in violation of 18 U.S.C. Sec. 1546. Domanski was sentenced to a term of 21 months imprisonment to be followed by a three-year term of supervised release. Domanski challenges the district court's application of U.S.S.G. Sec. 2L2.1 in calculating his sentence. For the reasons set forth below, we affirm the judgment of the district court.
 
 Facts
 
 2
 On February 24, 1993, Domanski was preparing to board a British Airways flight from Chicago's O'Hare Airport to London, England. However, before he was able to board the plane, Domanski was stopped by Senior United States Customs Inspector Robert Trotto. A search of Domanski's luggage revealed an ultraviolet light of the type used by the Immigration and Naturalization Service ("INS") to detect fraudulent visas and passports; metallic pieces which, when assembled, formed a United States visa stamp used for printing nonimmigrant visas; dies used for printing the visas; photo negatives of nonimmigrant visas concealed within the lining of a shaving kit; several pieces of United States' visas and pages torn from a Polish passport; metal number, letter and date dies; two ink rolls, one which produces a multi-line color similar to the ones used to make nonimmigrant visas; rolls of laminate, a metal vice, an engraving tool and a magnifying glass; and eleven Polish passports, none of which were in Domanski's name.
 
 
 3
 After being informed of his Miranda rights, Domanski gave a statement to United States Customs Inspectors. Domanski stated that he received the equipment found in his luggage from a man named "Bogden," whom he knew from the Polish community on the north side of Chicago, and that he was taking the equipment to his sister's home in Vienna, Austria where he planned to give it to an unidentified person in exchange for $2,000. Domanski confirmed that he had packed his own bags and had placed the photo negatives in the lining of his shaving kit. Domanski claimed that he had no ties to the United States, he was here working for a cleaning service, he had no property or residence here, he was living with a friend, and his family was in Poland. Domanski was then placed under arrest.
 
 
 4
 Domanski's detention hearing was held on March 5, 1993. At the hearing, Domanski admitted that he had been living in the United States since 1983 and that he was currently married, had one son and a stepdaughter, and was living with his family in Chicago. Domanski also stated that he had been a United States citizen since 1989 and carried a passport. After the hearing, Domanski was released on a $20,000 secured bond. On May 27, 1993, Domanski was charged in a two-count indictment with knowingly possessing plates in the likeness of a United States nonimmigrant visa plate designed for the printing of visa permits in violation of 18 U.S.C. Sec. 1546 (Count One) and possession of document-making implements with the intent to produce false United States visas in violation of 18 U.S.C. Sec. 1028(a)(5) (Count Two). The arraignment was held on June 11, 1993 where Domanski entered a plea of not guilty to both counts.
 
 
 5
 On January 20, 1994, prior to trial on these charges, Special Agent James Stewart of the United States Customs Service, who had assisted in Domanski's previous arrest, spotted Domanski entering O'Hare Airport. Agent Stewart, accompanied by Chicago Police Officer Robert Herr, followed Domanski. Domanski exited the airport. As Stewart and Herr walked toward Domanski, Domanski headed back towards the terminal and started to run. Stewart and Herr pursued him into the airport. During the chase, Domanski threw an envelope into a cardboard box which was located in a vacant store in the airport. Herr apprehended Domanski while Stewart retrieved the envelope. Inside the envelope, Stewart found two Polish passports containing two non-immigrant visas--neither was in Stewart's name, one contained the photograph of a young female and the other of a young male. Both of the visas were counterfeit reproductions. Domanski was searched and found to be in possession of a round-trip airline ticket to New York City bearing the name "Adam Muller." Stewart and Herr put Domanski into Herr's car to take him to the airport customs office. While the car was moving, Domanski tried to escape. However, Stewart and Herr prevented Domanski's escape and secured him in the vehicle.
 
 
 6
 Thereafter, the government filed a motion to revoke Domanski's pretrial release. This motion was granted on February 14, 1994. On March 3, 1994, the grand jury returned a superseding three-count indictment. Counts One and Two were identical to Counts One and Two of the original indictment. Count Three charged that on or about January 20, 1994, Domanski knowingly possessed two counterfeit nonimmigrant visas in violation of 18 U.S.C. Sec. 1546. Count One of the superseding indictment was subsequently dismissed and Counts Two and Three were renumbered counts One and Two, respectively. Presentence Investigation Report, May 8, 1994, at 1. On March 21, 1994, Domanski entered a plea of not guilty to the two count superseding indictment. A jury trial was held and, on March 28, 1994, the jury returned a verdict of not guilty of the charge in Count One and guilty of the charge in Count Two--knowingly possessing two counterfeit nonimmigrant visas in violation of 18 U.S.C. Sec. 1546. With a base offense level of 16 and a criminal history category of I, Domanski's applicable guideline range was 21 to 27 months imprisonment. Domanski was sentenced to the minimum within the range, 21 months imprisonment, to be followed by three years of supervised release. This timely appeal follows.
 
 Discussion
 
 7
 Domanski maintains that the district court erred in applying U.S.S.G. Sec. 2L2.1 in calculating his sentence. The government points out, and Domanski concedes, that he did not object to the district court's application of U.S.S.G. Sec. 2L2.1 in calculating his sentence. By failing to preserve this issue with the district court, Domanski has forfeited his right to appellate review. United States v. Morgano, 39 F.3d 1358, 1369 (7th Cir.1994); United States v. Rivero, 993 F.2d 620, 623 (7th Cir.1993). However, this challenge to sentencing may be reviewed for plain error. Fed.R.Crim.P. 52(b); United States v. Olano, 113 S.Ct. 1770, 1777 (1993); Morgano, 39 F.3d at 1369; Rivero, 993 F.2d at 623. Under plain error review, a defendant must demonstrate "that there was error, that the error was plain, that the plain error affected his substantial rights, and that the plain error which affected his substantial rights also seriously affected the fairness, integrity, or public reputation of judicial proceedings." United States v. Davis, 15 F.3d 1393, 1407 (7th Cir.1994) (citing Olano, 113 S.Ct. at 1779), cert. denied, 115 S.Ct. 250 (1994); see also United States v. McGill, 32 F.3d 1138, 1142 (7th Cir.1994).
 
 
 8
 A district court's selection of the applicable guideline section is a question of law, and, accordingly, it is reviewed de novo. United States v. Dion, 32 F.3d 1147, 1148 (7th Cir.1994) (citing United States v. Rubin, 999 F.2d 194, 196 (7th Cir.1993)). In sentencing a defendant under the sentencing guidelines, a district court must first "[d]etermine the offense guideline section ... most applicable to the offense of conviction (i.e., the offense conduct charged in the count of the indictment or information of which the defendant was convicted)." U.S.S.G. Sec. 1B1.2(a); Dion, 32 F.3d at 1148-49. Domanski was convicted of violating 18 U.S.C. Sec. 1546 by knowingly possessing two counterfeit passports. The sentencing guidelines' statutory index (U.S.S.G., Appendix A) lists two corresponding application guidelines--U.S.S.G. Secs. 2L2.1 and 2L2.2. Since only one of the two can be used, the district court must determine which is the most applicable "based upon the nature of the offense conduct charged in the count of which the defendant was convicted." U.S.S.G. Sec. 1B1.2, comment 1.
 
 
 9
 Domanski argues that in finding Sec. 2L2.1 to be the applicable guideline, the district court improperly relied upon conduct for which he was acquitted and, hence, its application was erroneous. In the Presentence Investigation Report (hereinafter "PSI"), Domanski's probation officer recommended that Sec. 2L2.1 was the most appropriate guideline. Specifically, the PSI provides as follows:
 
 
 10
 The defendant possessed two fraudulent passports at the time of his arrest on January 24, 1994. In addition, Mr. Domanski possessed extensive equipment and materials needed to produce false immigration documents. It is the assessment of the undersigned that it can be reasonably deduced that the defendant participated in the trafficking of fraudulent documents. Therefore, the most applicable guideline for this case is 2L2.1.
 
 
 11
 PSI, Jun. 8, 1994, at 5. There is no question that in recommending the application of Sec. 2L2.1, the PSI relied, in part, upon conduct underlying the offense for which Domanski was acquitted--namely, that he possessed equipment and materials used to produce false immigration documents. However, there is no indication in the record that the district court relied upon the PSI in making its finding that Sec. 2L2.1 was the most applicable guideline. In fact, the record does not provide any reasons for why this guideline was selected. Nonetheless, because it is obvious that Sec. 2L2.1 is the most applicable guideline here, there is no need to speculate as to what the district court did or did not consider in making its determination.
 
 
 12
 As mentioned above, the only application guidelines which correspond to a violation of 18 U.S.C. Sec. 1546 are U.S.S.G. Secs. 2L2.1 and 2L2.2. U.S.S.G. Sec. 2L2.2 was intended to apply to offenses committed by an alien in furtherance of his attempt to unlawfully remain in the United States. U.S.S.G. Sec. 2L2.2 (Section 2L2.2 is entitled "Fraudulently Acquiring Documents Relating to Naturalization, Citizenship, or Legal Resident Status for Own Use; False Personation of Fraudulent Marriage by Alien to Evade Immigration Law; Fraudulently Acquiring or Improperly Using a United States Passport "). Domanski was convicted for possession of two counterfeit passports. Having been a citizen of the United States since 1989, he had no need to obtain any counterfeit passports for his own use. Tr., Mar. 5, 1993, at 21; PSI at 8. Even if he did, Domanski could not have used the passports that were found in his possession--they were not in his name and the photographs were not of Domanski. Clearly, Domanski was not in possession of the passports so that he could unlawfully remain in the United States. Accordingly, his possession of the counterfeit passports does not fall under the conduct proscribed in Sec. 2L2.2.
 
 
 13
 At oral argument, counsel for Domanski conceded that Sec. 2L2.2 does not apply to Domanski's conduct. While counsel also argued that Sec. 2L2.1 is not applicable, counsel never suggested what guideline, then, is. Regardless of what argument counsel was attempting to pursue at oral argument, it is clear that Sec. 2L2.1 is the only guideline under which Domanski can be sentenced. Although there are no cases in this circuit interpreting the application of this guideline, its scope is clear--it is intended to encompass an individual's illegal assistance of others attempting to evade immigration law. U.S.S.G. Sec. 2L2.1 (Section 2L2.1 is entitled "Trafficking in a Document Relating to Naturalization, Citizenship, or Legal Resident Status, or a United States Passport; False Statement in Respect to the Citizenship or Immigration Status of Another; Fraudulent Marriage to Assist Alien to Evade Immigration Law "). Domanski was convicted of knowingly possessing counterfeit passports; passports which were intended to aid others in evading immigration law. Moreover, at the time of his possession of the passports, Domanski was at O'Hare Airport with a carry-on bag and an airline ticket to New York. Tr., Mar. 22, 1994, at 95, 102, 107. Although the ticket was not in his name, since leaving Illinois would have constituted a violation of his pretrial release, Domanski had good reason to purchase the ticket under an assumed name. Tr. at 106-07. Hence, Domanski could have intended to use the airline ticket for his own use. There is only one reasonable explanation for Domanski's possession of the passports--that he was involved in trafficking them. Since Sec. 2L2.1 specifically applies to trafficking in documents relating to immigration status, it is the most applicable guideline here.
 
 
 14
 Even if Domanski was not in the act of trafficking at the time of his arrest (although it is difficult imagine what else he was doing), Domanski's possession of these counterfeit passports demonstrates, at the very least, that he was somehow involved in assisting others in evading the immigration laws of the United States. Although mere possession of counterfeit passports not intended for one's own use is not specifically proscribed by Sec. 2L2.1, since Sec. 2L2.1 is the only guideline which covers activity designed to assist others in evading immigration law, it would still be the most applicable guideline here.
 
 
 15
 Domanski argues that Sec. 2L2.1 requires a profit motive and that since there was no evidence indicating that Domanski was going to benefit financially from his possession of the two passports, Sec. 2L2.1 does not apply. This contention, however, is contradicted by Sec. 2L2.1(b)(1) which provides that "if the defendant committed the offense other than for profit," then the base offense level should be decreased by 3 levels. This language makes clear that profit is a factor to be considered as part of the district court's actual application of the guideline (i.e., in determining whether to decrease the base offense level listed in Sec. 2L2.1(a))--not in determining whether the guideline applies at all. Domanski also argues that since Sec. 2L2.1(b)(2)(A) provides for enhancement of sentence based on sets of documents or passports and since he was in possession of only two passports, Sec. 2L2.1 does not apply. This argument is equally without merit. If, in order to apply Sec. 2L2.1, the offense was required to involve at least six sets of passports, there would be no reason to provide a specific enhancement for this conduct.
 
 
 16
 Since Sec. 2L2.1 is the most applicable guideline to the conduct for which Domanski was convicted, the district court did not commit error (much less plain error) in sentencing Domanski under Sec. 2L2.1. Accordingly, we AFFIRM the district court's judgment.