REVISED MARCH 23, 2000

**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

**No. 99-10848**

**UNITED STATES OF AMERICA,**

**Plaintiff-Appellee,**

**VERSUS**

**MARIA LUISA PRINCIPE,**

**Defendant-Appellant.**

Appeal from the United States District Court
for the Northern District of Texas

February 11, 2000

Before KING, Chief Judge, and DUHÉ and DeMOSS, Circuit Judges.

DeMOSS, Circuit Judge:

Defendant-appellant Maria Luisa Principe appeals from the sentence imposed by the district court following her pleading guilty, pursuant to a plea agreement, to two counts of knowingly possessing counterfeit alien registration receipt cards in violation of 18 U.S.C. § 1546(a).

## I.   BACKGROUND

Following execution of a search warrant and during a search of Principe's residence on January 29, 1999, INS agents recovered among other things, three fraudulent alien registration receipt

cards and two fraudulent social security cards from Principe's purse. The first card featured Principe's photograph and was in the name of Laura Castanon. A second card also featured Principe's photograph, but was in the name of Victoria Rodriguez. And a third card was in the name of Reginaldo Gallardo. The two social security cards recovered from Principe's purse were in the names of Laura Castanon and Victoria Rodriguez. Also recovered during the search of Principe's residence were 18 fraudulent but blank INS notice of action forms (form no. 1-797C) used for obtaining replacement alien registration receipt cards; 3 fraudulent Mexican birth certificates in the name of Rick Meza; 4 fraudulent but blank Mexican birth certificates; 17 fraudulent but blank Mexican entry forms (form no. F.M.6); 15 fraudulent but blank Mexican military service booklets; and 19 fraudulent Certificates of Naturalization. All told, 90 fraudulent documents were found at Principe's home. Before executing the search warrant, the agents determined that Principe was a lawful resident alien.

On April 20, 1999, a six-count superseding indictment was returned against Principe. That indictment charged Principe with one count of encouraging an alien to illegally enter the United States in violation of 8 U.S.C. § 1324(a)(1)(iv); two counts of possessing a fraudulent alien registration receipt card in violation of 18 U.S.C. § 1546(a); one count of possession of forged Immigration and Naturalization documents in violation of 18 U.S.C. § 1546(a); one count of possession of five or more false identification documents in violation of 18 U.S.C. § 1028(a)(3);

and one count of possession of counterfeit naturalization documents in violation of 18 U.S.C. § 1426(c). Pursuant to a plea agreement, Principe entered a guilty plea to the two counts charging her with possession of fraudulent alien registration receipt cards (counts two and three) and all remaining counts were dismissed at the time of her sentencing on July 16, 1999.

At sentencing, the district court permitted the government to call as a witness, Special Agent Edward Koranda of the Immigration and Naturalization Service ("INS"), and over the objections of Principe's counsel, Agent Koranda testified regarding his opinion of the potential uses Principe had for the two fraudulent alien registration receipt cards featuring her photograph. He testified that she could have: (1) given the cards to someone who looked like her; (2) used the cards as examples of the quality of fraudulent card she could obtain for others; or (3) used the cards herself to conceal her identity in the event she were apprehended smuggling aliens into the United States (i.e., if caught, she would produce the fake registration cards and be deported as Laura Castanon or Victoria Rodriguez, and then later return to the United States under her own name using her valid registration card). On cross-examination, Koranda conceded that he considered more than just the two fraudulent alien registration cards mentioned in the indictment and the factual resume to formulate his opinions.[1] He also

---

[1] The dissent asserts that neither the addendum to the PSR nor Agent Koranda's testimony "draw from Principe's activities that fall into the category of relevant conduct." Agent Koranda's concession on cross-examination belies this assertion.

3

testified that up until the week before sentencing he had consistently told the United States Attorney's office that he believed Principe had the cards for only the third use he testified to, that is, that Principe had the cards to use as false identification in the event she was apprehended smuggling illegal aliens into the United States.

At sentencing, Principe maintained that she had the two alien registration receipt cards only for the purpose of securing employment in the United States during the time she was waiting for her own legitimate registration receipt card to be processed. The district court however, considering the INS agent's testimony and all of the references in the pre-sentence report ("PSR") to the other fraudulent documents retrieved from Principe's residence, adopted the recommendation of the United States Probation Office that Principe be sentenced under U.S.S.G. § 2L2.1, which guideline deals with, among other things, trafficking in documents related to naturalization, citizenship, or legal resident status.[2]  The

_____

[2]  The factor which prompted the probation officer to select U.S.S.G. § 2L2.1 as the appropriate guideline for Principe's sentence was the presence in the heading of that guideline of the word "trafficking."  That word is not used anywhere in the statute of conviction and it is not defined anywhere in the Guidelines. The most applicable dictionary meaning of "trafficking" is "to carry on trade or commercial dealings" and "to trade or deal in a specific commodity or service, often of an illegal nature." WEBSTER'S COLLEGIATE DICTIONARY 1414 (1991).  The only portion of 18 U.S.C. § 1546(a) which even remotely contemplates "trafficking" is that portion of the third paragraph thereof which reads: "whoever ... sells or otherwise disposes of, or offers to sell or otherwise dispose of, or utters, such visa, permit or other document to any person not authorized by law to receive such document."  This language could support a determination that § 2L2.1 is the most appropriate of the two guidelines specified in the Appendix A - Statutory Index as being applicable to § 1546.  There is nothing,

district court overruled Principe's objection to the use of § 2L2.1 (with a base offense level of 11) and rejected her argument that § 2L2.2 (with a base offenses level of 8), dealing with the fraudulent acquisition of documents related to naturalization, citizenship, or legal resident status for one's personal use was the more appropriate guideline to use in determining the sentence to be imposed. Principe has timely appealed her sentence, arguing that the district court improperly utilized § 2L2.1, rather than § 2L2.2.

## II.  DISCUSSION

The sole issue before us is whether the district court erred in sentencing Maria Luisa Principe under U.S.S.G. § 2L2.1 rather than under U.S.S.G. § 2L2.2.  We review a district court's selection of the applicable sentencing guideline *de novo*.  *See* **United States v. Hornsby**, 88 F.3d 336, 338 (5th Cir. 1996).  After carefully reviewing the record in this case, and for the reasons discussed below, we find that the district court committed reversible error in sentencing Principe under § 2L2.1 rather than § 2L2.2.

When sentencing a defendant, the district court must first determine which offense guideline section is most applicable to the offense of conviction, generally by reference to the guidelines'

---

however, in the counts of the indictment to which Principe pleaded guilty nor in the plea agreement nor in the factual resume which even intimates, much less expressly states, that Principe's conduct related to "selling," "trading" or "dealing" in "such documents" to or with any person not authorized by law to receive such documents.

5

statutory index found at Appendix A thereto.  *See* U.S.S.G. § 1B1.2(a), comment 1.  If more than one offense guideline section is referenced for a particular statute, the district court must select the most appropriate section based upon the nature of conduct charged in the count for which the defendant was convicted. *See **id.**; see also **United States v. Beard***, 913 F.2d 193 (5th Cir. 1990).

In this case, the district court was faced with the dilemma of choosing between two competing offense guidelines sections, both of which were made applicable by the guidelines' statutory index to 18 U.S.C. § 1546(a).  The first, § 2L2.1, deals with "trafficking" in documents relating to naturalization, citizenship, or legal resident status and carries a base offense level of 11.  The second, § 2L2.2, deals with fraudulent acquisition of documents relating to naturalization, citizenship, or legal resident status for one's "own use" and carries a base offense level of 8.  Thus, in order to determine which offense guideline section to apply when sentencing Principe, the district court was required to select the most appropriate of the two applicable sections based upon the nature of conduct charged in the counts for which she pleaded guilty and was convicted.

As a preliminary matter, we note that the first three paragraphs of 18 U.S.C. § 1546(a), to which Principe twice pleaded guilty, provide as follows:

> (a) Whoever knowingly forges, counterfeits, alters, or falsely makes any immigrant or nonimmigrant visa, permit, border crossing card, alien registration receipt card, or

6

other document prescribed by statute or regulation for entry into or as evidence of authorized stay or employment in the United States, or utters, uses, attempts to use, possesses, obtains, accepts, or receives any such visa, permit, border crossing card, alien registration receipt card, or other document prescribed by statute or regulation for entry into or as evidence of authorized stay or employment in the United States, knowing it to be forged, counterfeited, altered, or falsely made, or to have been procured by means of any false claim or statement, or to have been otherwise procured by fraud or unlawfully obtained; or

Whoever, except under direction of the Attorney General or the Commissioner of the Immigration and Naturalization Service, or other proper officer, knowingly possesses any blank permit, or engraves, sells, brings into the United States, or has in his control or possession any plate in the likeness of a plate designed for the printing of permits, or makes any print, photograph, or impression in the likeness of any immigrant or nonimmigrant visa, permit or other document required for entry into the United States, or has in his possession a distinctive paper which has been adopted by the Attorney General or the Commissioner of the Immigration and Naturalization Service for the printing of such visas, permits, or documents; or

Whoever, when applying for an immigrant or nonimmigrant visa, permit, or other document required for entry into the United States, or for admission to the United States personates another, or falsely appears in the name of a deceased individual, or evades or attempts to evade the immigration laws by appearing under an assumed or fictitious name without disclosing his true identity, or sells or otherwise disposes of, or offers to sell or otherwise dispose of, or utters, such visa, permit, or other document, to any person not authorized by law to receive such document; or

....

18 U.S.C. § 1546(a).

7

Clearly this statute is designed to punish several types of conduct. Those acts described in the first paragraph revolve around a defendant's individual procurement, possession, or use of various fraudulent immigration documents. The second paragraph concerns a defendant's procurement, possession, or use of materials which would enable the defendant to manufacture or provide various fraudulent immigration documents to others. The third paragraph defines a real mixture of prohibited conduct including that which would enable the defendant to assist others. That the guidelines' statutory index references the potential applicability of both § 2L2.1 and § 2L2.2 for violations of 18 U.S.C. § 1546(a) is therefore, no surprise. Presumably, the "personal use" guideline section, § 2L2.2, could be applicable to violations charged under the first paragraph, and the "trafficking" section, § 2L2.1, could be applicable to violations charged under the second and third paragraphs. We note that the two counts of the indictment to which Principe pleaded guilty reference simple "possession" under the first paragraph of 18 U.S.C. § 1546(a).

Principe argues that the district court should have restricted its analysis of which guideline section applied to the language contained in her counts of conviction, and it should not have taken into consideration the other relevant conduct related to counts which the government dismissed. The government contends that in order to determine whether Principe's possession was for the purpose of "trafficking" -- making § 2L2.1 applicable, or for her "own use" -- making § 2L2.2 applicable, the district court had to

8

look to evidence at the sentencing hearing other than the direct language of the counts of conviction.  The government specifically asserts that "the evidence at the sentencing hearing was properly focused on the decisive issue of whether Principe possessed the cards in question for her own use."  Without citation to authority, the government further contends that the initial factual issue raised by the heading of § 2L2.2, that is, whether the cards were for Principe's "own use," is reviewable only for clear error, and that the district court's resolution of this factual issue necessarily required it to look beyond the conduct charged in the counts for which the Principe was convicted.  The government does cite **Beard** for the proposition that, in choosing between two possible guidelines, the district court may look to the general conduct of the defendant "irrespective of the statute of conviction."  **Beard**, 913 F.2d at 198.

The government's reliance on **Beard**, however, is misplaced.  In that case, we did hold that the district court could look to the general conduct of Beard irrespective of the statute of conviction, in order to sentence him under § 2F1.1, a fraud guideline, as opposed to § 2J1.3, a perjury guideline, but we did so only on the basis of two findings: first, because the offense to which Beard pleaded guilty specifically contained as an element "fraudulently making a false statement," see **Beard**, 913 F.2d at 198; and secondly, because in **Beard**, as part of his plea, the defendant stipulated and admitted to the very conduct giving rise to the applicability of the more severe fraud guideline, and under

9

§ 1B1.2(a), sentencing under the more severe guideline was therefore appropriate.

We agree with Principe that the district court can look only to the offense of conviction in order to determine which guideline section was applicable. In this situation, where the defendant has pleaded guilty pursuant to a plea agreement, the district court must look first at the language of the indictment, then to the language of the plea agreement and then to the stipulation of facts contained in the factual resume supporting the plea agreement. *See* U.S.S.G. § 1B1.2(a) (stating that when a plea agreement contains a stipulation that specifically establishes a more serious offense than the offense of conviction, the defendant may then be sentenced to the higher offense); *see also* **Beard**, 913 F.2d at 198 (once a defendant stipulates and acknowledges facts which establish a more serious offense, the district court may consider those facts when fashioning a sentence).

Here, the indictment, the plea agreement, and the factual resume support only the conclusion that Principe knowingly possessed two fraudulent alien registration receipt cards which featured her photograph and two different names. The factual resume filed in support of Principe's guilty pleas contained only the following facts:

> On November 20, 1998, **MARIA LUISA PRINCIPE**, did knowingly possess two counterfeit Immigration Naturalization alien registration receipt cards. The cards were in the names of Laura Castanon and Victoria Rodriguez and depicted Maria Luisa Principe's photograph. Maria Luisa Principe knew the cards were counterfeit.

10

The elements of the offenses to which Principe entered two guilty pleas; that is, two separate violations of 18 U.S.C. § 1546(a), were recited in the factual resume as follows:

1. That the defendant knowingly possessed an Immigration Naturalization Service alien registration receipt card;

2. That the document was counterfeited; and

3. That the defendant knew at the time of the possession that the document had been forged [sic] counterfeited.

Principe neither admitted nor stipulated to any facts or elements of her offense of conviction other than those contained in the factual resume. Thus, all that could be gleaned from the indictment, the plea agreement, and the factual resume, is that Principe pleaded guilty to "possessing" two fraudulent alien registration receipt cards featuring her photograph and two different names. And thus, under § 1B1.2(a) and our own precedent in *Beard*, without some reference in either the plea agreement or the factual resume which would constitute either a stipulation or an admission to other conduct which might be characterized as "trafficking," the appropriate offense guideline section could not be § 2L2.1. As a result, and combined with the fact that Principe's possession in her own purse of the two cards bearing her own likeness, only with differing names, by the government's and the district court's own concession, could reasonably have been for her own use were she to be arrested for smuggling aliens, we conclude that the appropriate sentencing guideline section to have

11

been applied in this case was the "personal use" section, § 2L2.2.[3]

### III.  CONCLUSION

Having conducted an exhaustive review of the record of this case, and for all of the foregoing reasons, we conclude that the district court committed reversible error in sentencing Maria Luisa Principe under U.S.S.G. § 2L2.1, and we therefore VACATE the sentence imposed and REMAND for resentencing under U.S.S.G. § 2L2.2.

---

[3]  Few circuit courts have addressed the propriety of using § 2L2.1 over § 2L2.2 when a defendant is convicted of the possession of a relatively minor number of false or fraudulent immigration documents.  Those which have, tend to focus on the availability of a personal use by the defendant for the fraudulent documents in determining whether the "personal use" section, § 2L2.2, is more appropriate. *See, e.g.,* ***United States v. Domanski***, 48 F.3d 1222, 1995 WL 87178, at *3 (7th Cir. March 2, 1995) (unpublished) ("Domanksi was convicted for possession of two counterfeit passports.  Having been a citizen of the United States since 1989, he had no need to obtain any . . . for his own use. Even if he did, Domanski could not have used the passports found in his possession -- they were not in his name and the photographs were not of Domanski.").  Here, the two fraudulent alien registration receipt cards found in Principe's purse did in fact feature her photograph, only the names were different.  In our view, it is plausible that the alien registration receipt cards at issue in this case were available for Principe's personal use.

12

KING, Chief Judge, dissenting:

I respectfully dissent. I would affirm Principe's sentence.

The PSR applied § 2L2.1 of the Sentencing Guidelines. Principe objected, arguing that the nature of the fraudulent documents alleged in the counts of conviction required the application of § 2L2.2. An Addendum to the PSR explained the rationale for application of § 2L2.1 as follows:

> The probation office supports the guideline computations in the Presentence Report and the application of USSG § 2L2.1 to determine the defendant's offense level computations. In determining what guideline would be most appropriate, the probation officer did not consider relevant conduct in this case, which consisted of the other documents found at the defendant's residence when the search warrant was executed. The probation office determined that the application of USSG § 2L2.1 was the appropriate guideline based on the defendant becoming an Unlawful [sic] Permanent Resident of the United States on June 9, 1997. The defendant had in her purse three fraudulent alien registration cards and two fraudulent social security cards. As mentioned in the Presentence Report, the fraudulent alien registration cards found in the names of Laura Castanon and Victoria Rodriguez had the defendant's photograph. The defendant had no reason to possess fraudulent alien registration cards in the two female names, since she was a Lawful Permanent Resident of the United States. A copy of the fraudulent alien registration receipt card in the name Victoria Rodriguez had an expiration date of August 5, 2001. The fraudulent alien registration receipt card in the name Laura Castanon had an expiration date of April 3, 2001. Based on the aforementioned, there was no reason for the defendant to be in possession of the fraudulent documents, and it is more difficult to believe that the defendant possessed those documents for her own use. Thus, the application of USSG § 2L2.1 is appropriate.

The district court, in overruling Principe's objections, said only that it accepted the government's arguments that the photo could be used by someone else who resembled Principe and also could be used

13

by her in helping other aliens illegally enter the United States.[4] That conclusion is amply supported by those portions of the PSR and its Addendum and of the testimony of the agent that focused on the counts of conviction.

It is no answer to this case to limit the inquiry to the indictment, the plea agreement and the factual résumé because none of those answers the question <u>why</u> Principe possessed the two fraudulent alien registration cards. That question has to be answered before a decision can be made as to which of the two Guidelines sections is the most appropriate. The Addendum and the testimony of the INS agent offered three possible reasons why Principe possessed the cards. Those reasons do not draw on Principe's activities that fall into the category of relevant conduct; they draw only on the evidence for the counts of conviction. The district court accepted two of those three reasons, and the two accepted dictated the application of § 2L2.1. In view of the fact that Principe was a lawful permanent resident and had no immediate need for a fraudulent registration card, it's hard for me to fault the district court's factual conclusion that she possessed the cards for use by someone else resembling her or for helping other aliens illegally enter the United States. That's the end of it as far as I am concerned.

---

[4] In stating that the district court considered the INS agent's testimony and all of the references in the PSR to the other fraudulent documents retrieved from Principe's residence, the panel majority suggests that those items formed the basis of the district court's conclusion to apply § 2L2.1. There is absolutely no indication in the district court's explanation for its decision that supports that suggestion.

14