# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-10962

UNITED STATES OF AMERICA,

      Plaintiff - Appellee

v.

JULIE GRANT, also known as Juliana Jacobs Grant, also known as Juliana Okwue Jacobs Grant, also known as Julianna Okwuenu,

      Defendant - Appellant

United States Court of Appeals
Fifth Circuit

**FILED**

March 1, 2017

Lyle W. Cayce
Clerk

---

Appeal from the United States District Court
for the Northern District of Texas

---

Before JOLLY, SMITH, and HIGGINSON, Circuit Judges.

STEPHEN A. HIGGINSON, Circuit Judge:

Defendant-Appellant Julie Grant was charged with four counts of making false statements under penalty of perjury in a bankruptcy proceeding in violation of 18 U.S.C. § 152(3). She moved to dismiss Counts Two and Four of the indictment for failure to state an offense. The district court denied the motion. At trial, the jury found Defendant guilty on Counts Two through Four. In determining Defendant's sentence, the district court calculated Defendant's guideline range using the perjury guideline, U.S.S.G. § 2J1.3. Defendant timely appealed, challenging (a) the district court's failure to dismiss Counts Two and Four; (b) the sufficiency of the evidence on Counts Two and Four; and

No. 15-10962

(c) the district court's decision to use the perjury guideline, instead of the fraud guideline, to calculate Defendant's sentence.  We AFFIRM.

I.

After filing five bankruptcy petitions between 2008 and 2011, Defendant was indicted on October 8, 2014, and charged with four counts of bankruptcy fraud under 18 U.S.C. § 152(3).  Defendant moved to dismiss the indictment. The Government then filed a superseding indictment that, relevantly here, was identical to the original indictment.

Count One of the superseding indictment alleges that in her December 2009 bankruptcy filing, Defendant knowingly and fraudulently failed to disclose her prior October 2008 and March 2009 bankruptcy filings.  Count Two alleges that in the same filing, Defendant knowingly and fraudulently disclosed only her social security number ending in 5571 (the "5571 number") when Defendant knew that she had also used another social security number ending in 3167 (the "3167 number").  Count Three alleges that in her August 2011 bankruptcy filing, Defendant knowingly and fraudulently failed to disclose her prior October 2008 and March 2009 bankruptcy filings.  Finally, Count Four alleges that in the same filing, Defendant knowingly and fraudulently disclosed only the 5571 number when Defendant knew that she had also used the 3167 number.

The district court treated Defendant's motion to dismiss the indictment as one to dismiss the superseding indictment.  Regarding Counts Two and Four, Defendant asserted that both Counts rested upon an erroneous statement of federal law because they alleged that Form B-21 (an official bankruptcy form that requires disclosure of the debtor's social security numbers) required the disclosure of every social security number "ever used" by the debtor.  She argued that Form B-21 does not require a debtor to disclose every social security number that the debtor has ever used, instead arguing

that she needed to disclose only the social security numbers that she "has." She contended that the offense required an affirmative false statement and asserted that her statement listing only one social security number was not false. The district court denied the motion. Before trial, the district court reexamined Defendant's motion to dismiss Counts Two and Four. The court denied the motion, stating that the case would proceed with "the indictment as is."

At trial, the Government presented extensive evidence that Defendant had the 3167 number from 1996 until at least 2008. In April 2008, Defendant applied for a new social security number and, in July 2008, she was issued the 5571 number. In a bankruptcy petition filed in December 2009, Defendant listed only the 5571 number on her Form B-21 filed in the bankruptcy proceeding. In August 2011, she filed another Form B-21 in a new bankruptcy proceeding and listed only the 5571 number. In both instances, the Forms B-21 required the debtor to list her social security number. Both Forms B-21 further directed the debtor to "state all" social security numbers if the debtor "has" more than one. Defendant declared both Forms B-21 true under penalty of perjury. Defendant presented no evidence and moved for a judgment of acquittal on all counts. The district court denied the motion. The jury found Defendant guilty of Counts Two through Four. She was found not guilty on Count One.

Defendant's presentence report determined that her total offense level was 14, applying U.S.S.G. § 2J1.3 (perjury). With an offense level of 14 and a Category I criminal history score, Defendant faced a guidelines range of 15 to 21 months. Defendant objected to the use of the perjury guideline, arguing that her offense was a fraud offense and therefore, that the offense level should be calculated under U.S.S.G. § 2B1.1 (theft, embezzlement, receipt of stolen property, property destruction, and offenses involving fraud or deceit)

No. 15-10962

(relevant here "fraud").  The district court found that perjury was the correct guideline and accordingly sentenced Defendant to three concurrent terms of 15 months of imprisonment, followed by a total of one year of supervised release. Defendant timely appealed.

## II.

## A.

Defendant argues that "Counts two and four of the superseding indictment are legally deficient because they rest on an erroneous statement of federal law."  Specifically, she argues that "Form B-21 does not require disclosure of any number previously 'used.'  It merely requires disclosure of the number the debtor currently 'has.'"  Defendant therefore reasons that the superseding indictment does not allege a false statement because it states that Form B-21 required that she "truthfully state all social security numbers ever used" by her when the Form did not actually require such disclosure.

This court reviews a preserved challenge to the sufficiency of an indictment de novo.  *United States v. Hoover*, 467 F.3d 496, 498 (5th Cir. 2006).

"An indictment is intended to provide notice to the defendant that allows [her] to intelligently consider [her] defense or plea."  *United States v. Angeles-Mascote*, 206 F.3d 529, 532 (5th Cir. 2000) (citing *United States v. Chappell*, 6 F.3d 1095, 1099 (5th Cir. 1993)).  "Therefore, '[t]o be sufficient, an indictment must allege each material element of the offense; if it does not, it fails to charge that offense.'"  *United States v. Berrios-Centeno*, 250 F.3d 294, 297 (5th Cir. 2001) (quoting *United States v. Cabrera-Teran*, 168 F.3d 141, 143 (5th Cir. 1999), *overruled on other grounds by United States v. Cotton*, 535 U.S. 625, 630–31 (2002)); *see also United States v. Gordon*, 780 F.2d 1165, 1169 (5th Cir. 1986) ("An indictment is sufficient if it contains the elements of the offense charged, fairly informs the defendant what charge [s]he must be prepared to meet, and enables the accused to plead acquittal or conviction in bar of future

prosecutions for the same offense." (citations omitted)).  Nonetheless, "[t]he test of the validity of the indictment is not whether the indictment could have been framed in a more satisfactory manner, but whether it conforms to minimal constitutional standards." *United States v. Fitzgerald*, 89 F.3d 218, 222 (5th Cir. 1996) (citation omitted).

Counts Two and Four of the superseding indictment allege every element of Defendant's offense.  The elements of Section 152(3) are "(1) there was a bankruptcy proceeding; (2) defendant made a declaration or statement under penalty of perjury in relation to the proceeding; (3) the declaration concerned a material fact; (4) the declaration was false; and (5) defendant made the declaration knowingly and fraudulently." *United States v. Spurlin*, 664 F.3d 954, 962 (5th Cir. 2011).  Both Counts Two and Four allege each element.  (1) Each count alleges that there was a bankruptcy proceeding, namely cases 09-38525-hdh7 and 11-35094-bjh13. (2) Each count alleges that Defendant made a statement under penalty of perjury in relation to that proceeding.  (3) Each count alleges that Defendant's false statement was "material."  (4) Each count alleges that Defendant made a "false statement" by submitting a "false Statement of Social Security Number(s) (Official Form B-21)."  And (5) each count alleges that Defendant "knowingly and fraudulently made a material false statement."

Even if Defendant is correct that the indictment misstated what Form B-21 requires, the indictment was not defective.  This court "treat[s] the allegation of additional facts beyond those which comprise the elements of the crime as 'mere surplusage.'" *United States v. Valencia*, 600 F.3d 389, 432 (5th Cir. 2010) (quoting *United States v. Robinson*, 974 F.2d 575, 578 (5th Cir. 1992)).  The indictment here—even without the description of what Form B-21 requires—alleges every element of the offense.  Accordingly, the additional factual description of Form B-21 is surplusage.  "Surplusage . . . may be

disregarded provided it neither broadens the indictment nor misleads the accused." *United States v. Thompson*, 990 F.2d 625, at *3 (5th Cir. 1993) (unpublished).

The description of what Form B-21 requires does not broaden the indictment because the indictment required the Government to prove a knowingly made false statement to secure a conviction. The indictment alleges that "Grant falsely represented and stated that Grant only had one social security number XXX-XX-5571, when Grant then well knew that she had used at least one other social security number in other bankruptcy petitions which Grant knew she was obligated to disclose." By including the phrase "which Grant knew she was obligated to disclose," the Government alleged that Defendant had an obligation to disclose her second social security number. Because Form B-21 requires only the disclosure of social security numbers that the debtor "has," the obligation language limits the indictment to what Form B-21 requires—disclosure of all social security numbers that the debtor "has."

Nor did the indictment mislead Defendant. By outlining each element of the offense, the indictment notified Defendant of the charges against her. *See United States v. Griffin*, 800 F.3d 198, 203 (5th Cir. 2015) (holding that an indictment gave sufficient notice when the defendant "knew before trial" the theory of criminality on which the Government would proceed); *United States v. Trice*, 823 F.2d 80, 89 n.8 (5th Cir. 1987) (holding that an indictment gave sufficient notice when the indictment charged the elements of the offense).

Accordingly, we hold that the indictment was not defective.[1]

---

[1] The authority Defendant cites is not to the contrary. Defendant cites two cases in support of her claim that the indictment is insufficient: *McVay v. Perez (In re Perez),* 415 B.R. 445 (Bankr. D. Colo. 2009), and *United States v. Good*, 326 F.3d 589 (4th Cir. 2003).

In *Perez*, a debtor purchased and then used a social security number to obtain credit. 415 B.R. at 447. The debtor filed for bankruptcy using the purchased social security number. *Id.* The Trustee alleged that "[b]y listing a false Social Security number on his Petition and

No. 15-10962

Statement of Social Security Numbers, the Debtor/Defendant knowingly and fraudulently made a false oath or account which is material to his bankruptcy case." *Id.* at 449. Defendant claims that *Perez* indicates that debtors are "damned if you do, damned if you don't" because debtors can be charged with making false statements both if they disclose social security numbers that they used but did not have (as Perez did) or if they fail to disclose a social security number that they use (as Defendant did). However, the prosecution in *Perez* is only in conflict with the prosecution here if Defendant is correct that the bankruptcy rules "only require[] a debtor to disclose his current, actual social security number." But that is not what the bankruptcy rules require. Instead, a debtor is required to disclose all numbers that they have. This rule flows from the plain meaning of Form B-21. The Form recognizes that a debtor can have more than one social security number and requires debtors who have more than one number to disclose all of them. This reading of Form B-21 also harmonizes this case with *Perez*: *Perez* made a false statement by listing a number that he did not have, Defendant made a false statement by failing to list a number that she did have. And, as explained above, this theory of Defendant's prosecution, although not artfully charged in the indictment, was inherent in the allegation that Defendant made a false statement on Form B-21.

In *Good*, the defendant applied for a Security Identification Display Area badge at the Norfolk Airport. 326 F.3d at 590. The application form asked, "Have you ever been convicted or found not guilty by reason of insanity of the following listed crimes . . . 22. Burglary, Theft, Armed robbery, Possession or Distribution of Stolen Property . . . 26. Dishonesty, Fraud, or Misrepresentation . . . ." *Id.* (alterations in original). The defendant, who had previously been convicted of embezzlement, answered "no." *Id.* Because of the embezzlement conviction, the Government charged the defendant with making a false statement on her application when she indicated that she had not been previously convicted of the listed crimes. *Id.* The defendant moved to dismiss the indictment, and the district court granted the motion. *Id.* The Fourth Circuit affirmed. *Id.* It reasoned that "[t]he defendant's response to the question was literally true [because the form did not ask about embezzlement], and thus, her indictment . . . was properly dismissed." *Id.* at 592. Here, however, unlike in *Good*, Defendant's responses on the Forms B-21 were not "literally true." That is, the failure to list an embezzlement conviction could never be false on the form at issue in *Good* because the form simply did not call for the disclosure of embezzlement convictions. The Forms B-21 call for the disclosure of a second social security number if the debtor has more than one. The indictment alleges that Defendant made a false statement on her Forms B-21. True, the Government's explanation in the indictment of why Defendant's statements were false was inartful. But the Government still alleges that Defendant made a false statement—and unlike in *Good*, the forms here could have required the disclosure that the Government demands. As the Fourth Circuit itself has explained, *Good*'s reasoning "does not apply in cases in which the focus is on the ambiguity of the question asked. Nor does it apply to an answer [that] would be true on one construction of an arguably ambiguous question but false on another." *United States v. Sarwari*, 669 F.3d 401, 407 (4th Cir. 2012) (citations and quotation marks omitted, alteration in original). Defendant was certainly free to argue at trial—and did argue—that she did not "have" multiple social security numbers. But if the Government's allegations are taken as true, as they must be when assessing the sufficiency of the indictment, then Defendant did not make a literally true statement on her Forms B-21, and thus *Good* does not apply.

7

No. 15-10962

B.

Defendant next argues that she was prejudiced by the indictment because "[t]he jury received an indictment which assumed a duty which does not exist—that when answering a question which asks for all social security numbers a person 'has', she in fact has a duty to list all numbers she 'has' AND ones she has ever used, whether or not she still 'has' them."  We disagree.

When allegedly prejudicial surplusage is shown to the jury and then challenged on appeal, this court will not "invalidate" a conviction unless it is "convinced that the allegedly excessive language was irrelevant, inflammatory and prejudicial."  *United States v. Bullock*, 451 F.2d 884, 888 (5th Cir. 1971).  This standard is "strict[,]" *United States v. Solomon*, 273 F.3d 1108, at *1 (5th Cir. 2001) (unpublished), and "exacting[.]"  *United States v. Wood*, 248 F.3d 1143, at *4 (5th Cir. 2001) (unpublished).

Generally, correct jury instructions cure deficiencies in the indictment. *See, e.g.*, *United States v. Coppin*, 569 F. App'x 326, 334–35 (5th Cir. 2014) (unpublished) ("The conviction under valid instructions creates a presumption that there was no harm arising from the failure of a grand jury to charge that missing element of the necessary intent." (citation omitted)); *United States v. Mauskar*, 557 F.3d 219, 227 (5th Cir. 2009) (unanimity instruction sufficient to cure alleged duplicity in indictment); *United States v. Dentler*, 492 F.3d 306, 311–312 (5th Cir. 2007) (no prejudice where indictment excluded an element of the crime because the instructions included the element).

Here, the jury was warned that the indictment was "merely an accusation, nothing more[.]"  The jury was further instructed that it was their duty "to follow all of the rules of law as" the district court explained them and that the instructions contained all of the law that applied to the case.  The district court then proceeded to give the jury an extensive outline of bankruptcy law principles.  These bankruptcy instructions specifically

8

described Form B-21 and informed the jury that "[o]n the [Form B-21], below the line on which the debtor lists his or her social security number, the form states: 'If more than one, state all.'" Defendant did not object to those instructions. Moreover, because the jury is presumed to follow its instructions, *see United States v. Webster*, 162 F.3d 308, 324 (5th Cir. 1998), we presume that the jury followed the instructions with regard to what Form B-21 requires. Accordingly, we hold that Defendant was not prejudiced by the jury receiving the indictment.

In any event, even if the jury instructions did not cure the error, we hold that any error was harmless. Defendant's prejudice argument is that by receiving the indictment, the jury received an incorrect statement of the law. Specifically, Defendant complains that the indictment allowed the jury to convict on a theory (that Defendant "used" but did not "have" more than one social security number) that was not unlawful (because Defendant's Forms B-21 could only have been false if Defendant has more than one social security number). Defendant's prejudice theory therefore functions like the prejudice theory related to an overly broad jury instruction—both potentially allow a jury to convict based on conduct that is not unlawful. Jury instructions that misstate the law are subject to harmless error review. *See, e.g.*, *Neder v. United States*, 527 U.S. 1, 9–10 (1999) (collecting cases). Harmless error analysis is appropriate here as well. Indeed, this court has previously analogized errors in indictments to errors in jury instructions for the purposes of determining susceptibility to harmless error analysis. *See, e.g.*, *United States v. Robinson*, 367 F.3d 278, 286 (5th Cir. 2004) ("We need not diminish the importance of the Fifth Amendment right to a grand jury indictment to conclude that the error at issue in *Neder*—the failure to include an element of the crime in petit jury instructions—is difficult to distinguish from the present one, and we find no compelling reason to carve out an exception to *Neder*'s harmless error rule for

such an analytically similar claim.").  And the analogy is especially apt here because Defendant's prejudice theory is essentially that the indictment gave the jury an erroneous instruction.

"Erroneous jury instructions are harmless if a court, 'after a thorough examination of the record, is able to conclude beyond a reasonable doubt that the jury verdict would have been the same absent the error.'" *United States v. Cessa*, 785 F.3d 165, 186 (5th Cir. 2015) (quoting *United States v. Skilling*, 638 F.3d 480, 482 (5th Cir. 2011)).  We hold that any error related to the jury viewing the indictment was harmless.

First*,* the jury was given the Forms B-21 and received extensive instruction on what the Forms required.  The jury could therefore see for itself what the Forms B-21 required.  And the jury was also instructed that to convict, it had to find a false statement on the Forms B-21.  *See, e.g.*, *United States v. Green*, 246 F.3d 433, 437 (5th Cir. 2001) (considering the jury charge as a whole when conducting harmless error analysis).

Second, at trial Defendant vigorously argued that she did not "have" the 3167 number (or, indeed, more than one social security number at all) at the time that the Forms B-21 were signed.  That the jury convicted, despite the argument, indicates that any instructional error was harmless.  *See, e.g.*, *United States v. Montgomery*, 747 F.3d 303, 311 (5th Cir. 2014) ("Finally, the [defendants] have not shown that the district court's jury instruction prevented them in any way from presenting the full breadth of their good-faith defense to the jury.  In fact, the [defendats'] good-faith defense was central to defense counsel's closing argument[.]  Thus, . . . we are convinced that the erroneous jury instruction had no bearing . . . .").

Third, and most importantly, the Government presented overwhelming evidence that Defendant continued to have the 3167 number even after being issued the 5571 number.  The Government provided ample evidence that before

2008, Defendant had the 3167 number.  In 2008, Defendant applied for a second social security number and was issued the 5571 number.  Defendant's theory at trial was that once she received the 5571 number, she ceased to have the 3167 number.  But the Government submitted overwhelming evidence to the contrary.

The Government demonstrated that in October 2008—after receiving the 5571 number—Defendant filed for bankruptcy using the 3167 number. Moreover, in 2009, a Bankruptcy Judge told Defendant that "there are going to be issues that have to be sorted through with respect to why you have two social security numbers . . . ."  Finally, the Government submitted evidence that the Social Security Administration did not know that Defendant had the 3167 number when it issued her the 5571 number and that it would not have issued Defendant a new number had it known that she already had one. Together this evidence indicated that Defendant continued to use both of her social security numbers—that is, that she had two numbers.  Additionally, it would have been unreasonable for the jury to conclude that the Social Security Administration cancelled the 3167 number when Defendant was issued the 5571 number because the uncontroverted testimony demonstrated that the Social Security Administration did not even know that Defendant had been issued two numbers.

Taking together the facts that (1) the jury had before it the Forms B-21 and could see for itself what the Form required; (2) Defendant was free to argue—and did vigorously argue—that she did not have more than one social security number at the time she signed the Forms; and (3) the overwhelming evidence that Defendant did in fact have two social security numbers when she signed the Forms, we hold any prejudice introduced to the jury by the indictment's "used" language was harmless.

No. 15-10962

III.

Defendant next argues that the evidence was insufficient to support her convictions on Counts Two and Four. Specifically, she argues that the Government did not prove that she continued to "have" the 3167 number after she received the 5571 number and, accordingly, the Government did not prove that she had two social security numbers on the respective dates that she signed the Forms B-21. We disagree.

Defendant preserved her challenge to the sufficiency of the evidence. Therefore, this court's review is de novo. *See United States v. Frye*, 489 F.3d 201, 207 (5th Cir. 2007) (citation omitted). "When reviewing the sufficiency of the evidence, this Court views all evidence, whether circumstantial or direct, in the light most favorable to the [g]overnment[,] with all reasonable inferences to be made in support of the jury's verdict." *United States v. Terrell*, 700 F.3d 755, 760 (5th Cir. 2012) (quoting *United States v. Moser*, 123 F.3d 813, 819 (5th Cir. 1997)). "[R]eviewing courts must affirm a conviction if, after viewing the evidence and all reasonable inferences in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Vargas-Ocampo*, 747 F.3d 299, 301 (5th Cir. 2014) (en banc) (citation omitted).

As explained above, the Government presented evidence from which the jury could have inferred that Defendant continued to have the 3167 number after receiving the 5571 number. Specifically, the Government submitted evidence showing that Defendant continued to use the 3167 number after receiving the 5571 number and that the Social Security Administration would have had no reason to cancel the 3167 number. From this evidence, the jury could have reasonably concluded that Defendant continued to "have" two social

12

security numbers when she signed the Forms B-21.  Accordingly, we reject Defendant's sufficiency challenge.

## IV.

Defendant argues that the district court erred by applying U.S.S.G. § 2J1.3 (perjury) to her offense.  Instead, she argues that the appropriate guideline is U.S.S.G. § 2B1.1 (fraud).  This court reviews a district court's selection of the applicable sentencing guideline de novo.  *United States v. Principe*, 203 F.3d 849, 851 (5th Cir. 2000).  "When sentencing a defendant, the district court must first determine which offense guideline section is most applicable to the offense of conviction, generally by reference to the guidelines' statutory index found at Appendix A thereto."  *Id.* (citing U.S.S.G. § 1B1.2(a), cmt. 1).  "If more than one offense guideline section is referenced for a particular statute, the district court must select the most appropriate section based upon the nature of conduct charged in the count for which the defendant was convicted."  *Id.* (citing U.S.S.G. § 1B1.2(a), cmt. 1).

The guidelines' statutory index lists three possible guidelines for violations of 18 U.S.C. § 152:  U.S.S.G. § 2B1.1 (fraud); U.S.S.G. § 2B4.1 (bribery); and U.S.S.G. § 2J1.3 (perjury).  *See* U.S.S.G. App'x A.  Circuit courts are divided over which of these three provisions applies to a conviction under Section 152(3).  Broadly, two approaches have emerged.  Some courts look at the defendant's conduct to determine whether the crime more closely resembles fraud, bribery, or perjury.  *See, e.g.*, *United States v. Turner*, 182 F.3d 934, at \*2 (10th Cir. 1999) (unpublished) (applying the fraud guideline because the defendant's "false statement under bankruptcy petition was made for purposes relating to fraudulent activity"); *United States v. Kaster*, 139 F.3d 902, at \*3 (7th Cir. 1998) (unpublished) (applying the perjury guideline because evidence indicated that the defendant did not have a pecuniary interest for making the false statement).  Other courts look only to the

allegations in the indictment to determine whether the alleged offense more closely resembles fraud, bribery, or perjury. *See, e.g.*, *United States v. Boulware*, 604 F.3d 832, 836 (4th Cir. 2010) (applying the perjury guideline when "[t]he indictment did not characterize [the defendant's] failure to disclose the prior bankruptcies as being part of a plan to avoid making payment to specific creditors. Rather, the indictment focused on the fact that her nondisclosure constituted a false declaration"); *United States v. Lewis*, 161 F. App'x 322, 324 (4th Cir. 2006) (unpublished) (applying the perjury guideline when "the indictment concentrated on the gravity of the [the defendant's] misrepresentation to the bankruptcy court").

Under either approach,[2] the district court did not err in using the perjury guideline. First, the Defendant's conduct more closely aligns with perjury. The Government did not attempt to prove fraud at trial. More specifically, the Government introduced no evidence showing that creditors lost money because of Defendant's conduct. And Defendant's false statements could not have had an economic impact because both bankruptcy petitions were dismissed for procedural reasons independent of Defendant's false statements. Accordingly, the conduct that Defendant was prosecuted for was not defrauding creditors, but was instead making false statements to the court. Second, the indictment

---

[2] Respectfully, we believe that the latter view is more in line with both the text of the guidelines and this court's jurisprudence. The guidelines instruct courts to "[r]efer to the Statutory Index . . . to determine the . . . offense guideline, referenced in the Statutory Index for the offense of conviction." U.S.S.G. §1B1.2. The Commentary to Section 1B1.2 then provides that when the Statutory Index specifies more than one offense guideline "the court will determine which of the referenced guideline sections is most appropriate for the offence conduct charged in the count of which the defendant was convicted." U.S.S.G. §1B1.2, cmt. 1. Interpreting these provisions, this court has noted that, in determining the offense guideline section, courts should look only to the offense conduct charged in the indictment or information, not to the defendant's specific conduct as proven at trial or at sentencing. *See, e.g.*, *United States v. Goldfaden*, 959 F.2d 1324, 1329 (5th Cir. 1992), *superseded on other grounds as recognized by United States v. Puckett*, 505 F.3d 377, 384–85 (5th Cir. 2007); *United States v. Brunson*, 882 F.2d 151, 156 (5th Cir. 1989); *United States v. Heli-Mejia*, 239 F. App'x 938, 938 (5th Cir. 2007) (unpublished).

No. 15-10962

charges that Defendant made false statements under the penalty of perjury; it does not focus on defrauding creditors at all.  Put differently, "the indictment focused on the fact that [Defendant's] nondisclosure constituted a false declaration made to the bankruptcy court under penalty of perjury.  Thus, the gravamen of the charge was that [Defendant] interfered with the bankruptcy court's administration of justice, not that she defrauded any creditors." *Boulware*, 604 F.3d at 836.  Accordingly, the proper guideline was the perjury guideline.[3]

V.

Finding no reversible errors, we AFFIRM.

---

[3] We note that this court previously held that the fraud guideline (then Section 2F1.1), rather than the perjury guideline, was appropriately applied to a conviction under Section 152. *United States v. Beard*, 913 F.2d 193, 197–98 (5th Cir. 1990).  But *Beard* was decided before the Sentencing Commission added the perjury guideline to the statutory index for Section 152.  Hence other Circuit Courts have observed that *Beard*'s analysis of the applicability of the perjury guideline to Section 152 may be superseded because of the subsequent amendment to the Guidelines.  *See Kaster*, 139 F.3d 902, at *3 n.4.