# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 17-30285

United States Court of Appeals
Fifth Circuit

**FILED**

February 19, 2018

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

DANIEL JAMES STANFORD,

Defendant-Appellant.

Appeals from the United States District Court
for the Western District of Louisiana

Before STEWART, Chief Judge, and JOLLY and OWEN, Circuit Judges.

CARL E. STEWART, Chief Judge:

This criminal appeal returns to this court after Stanford was resentenced following this court's decision in *United States v. Stanford* remanding the case "for any other proceedings as needed."[1] Back before this court on appeal, Stanford, in addition to alleging various errors in the district court's redetermination of his guideline range, argues that the district court erred in denying his request for in camera review of various co-conspirator witness reports and requests that this court reassign the case to a different district court judge. Because the district court did not commit reversible error, we

---

[1] 823 F.3d 814, 852 (5th Cir. 2016) (hereinafter, "*Stanford I*").

No. 17-30285

AFFIRM. Stanford's request for reassignment of the case to a different district court judge is DENIED.

## I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY[2]

On September 4, 2012, Stanford and eight co-conspirators were indicted for their then-alleged involvement in a conspiracy to distribute a controlled substance analogue ("CSA"), in violation of 21 U.S.C. §§ 841, 846(b)(1)(c), 813, and 802(32)(A).

As relevant here, Stanford was charged with: (1) conspiracy to distribute a CSA ("Count One"); conspiracy to introduce and cause to be introduced misbranded drugs into interstate commerce ("Count Two"); and conspiracy to engage in money laundering ("Count Three") (collectively, "Counts One, Two, and Three"). At the time of his indictment, Stanford was a practicing criminal defense lawyer in Lafayette, Louisiana. The product in question, "Mr. Miyagi," is a synthetic cannabinoid, and contained a Schedule I CSA known as "AM–2201." Prior to trial, the parties quarreled as to whether Count One required an instruction to the jury that they must find, as an element of the CSA conspiracy, that Stanford knew AM-2201 was a CSA.

The district court concluded that such knowledge was not required, but acknowledged that the question was the subject of a circuit split. The district court agreed to send the issue to the jury as an interrogatory and permitted Stanford to put on evidence addressing his knowledge that AM-2201 was a CSA. In fact, the district court's language was more emphatic, stating that the "question of knowledge needs to be addressed in th[e] trial." After a 10-day jury trial, on August 20, 2014, the jury found Stanford guilty on Counts One, Two, and Three. In a special interrogatory, the jury concluded that Stanford knew

---

[2] A more detailed factual background setting forth trial testimony and the factual underpinnings of Stanford's indictment is set forth in *Stanford I*. We address the facts and procedural history as pertinent to this appeal.

that AM-2201 was a CSA. On January 15, 2015, the district court sentenced Stanford to 121 months' imprisonment, grouping Counts One and Two and applying the base offense level calculated for Count One as the underlying offense for purposes of calculating the base offense level for Count Three. The sentences on Count One and Count Three ran concurrently. Stanford timely appealed.

In *Stanford I*, Stanford challenged his convictions on Count One and Count Three. He also argued that the Government ran afoul of *Brady v. Maryland*, 373 U.S. 83 (1963) by failing to turn over witness reports of co-defendants Dan Francis, Boyd Barrow, Drew Green, and Joshua Espinoza. Applying the Supreme Court's intervening ruling in *McFadden v. United States*, the *Stanford I* panel agreed with Stanford's challenge to his conviction on Count One. *See* — U.S. —, 135 S. Ct. 2298 (2015). The *McFadden* decision resolved the knowledge dispute in Stanford's favor, holding that a defendant's knowledge that a CSA was indeed a CSA is an element necessary to secure a conviction under 21 U.S.C. §§ 846 and 841(b)(1)(C). *See id.* at 2305. In light of that holding, the *Stanford I* panel concluded that the district court's failure to properly instruct the jury with respect to knowledge was not harmless error. *Stanford I*, 823 F.3d at 827–38. Notwithstanding that conclusion, the *Stanford I* panel "affirmed the sentence and conviction on all other counts, and remand[ed] for [any other] proceedings as needed."[3] *Stanford I*, 823 F.3d at 822, 852.

---

[3] The affirmation of the sentences on the surviving convictions was likely rooted in the rationale outlined in footnote 35, which provided:

> At oral argument, Stanford's counsel agreed that any *McFadden* error affects only Count One. Thus, the reversal on that court [sic] has no effect on the sentence related to any other counts.

*Stanford I*, 823 F.3d at 843 n.35.

No. 17-30285

On remand, the district court, despite feeling constrained from doing so in light of *Stanford I*'s mandate, resentenced Stanford on the remaining convictions—namely, Count Two and Count Three. The district court imposed the same sentence of 121 months' imprisonment on Count Three, arriving at the base offense level for Count Three through the calculation of the guideline range applicable to Count Two. The district court also reiterated its *Brady* ruling on remand, summarily rejecting Stanford's request for the same witness reports. Stanford timely appealed these rulings.  In addition, Stanford requests that this panel reassign the case to a different district court judge.

## II.    DISCUSSION

The parties understandably spend considerable time on appeal briefing whether Stanford was entitled to resentencing, focusing on the repercussions of *Stanford I*'s mandate and the perceived oral argument concession embodied in footnote 35 of the *Stanford I* opinion. Nevertheless, we decline to address the applicability of the mandate rule to Stanford's entitlement to resentencing. Instead, we will proceed to the merits of the sentencing issues raised because there was no reversible error.  *See United States v. Simpson*, 796 F.3d 548, 552 n.7 (5th Cir. 2015) (reaching merits to affirm after reminding that mandate rule is discretionary rather than jurisdictional).

### A. Application of Sentencing Guidelines at Resentencing

This court reviews a district court's interpretation and application of the Guidelines, including any cross references and selection of the applicable sentencing guideline, de novo. *See United States v. Grant*, 850 F.3d 209, 219 (5th Cir. 2017) (citation omitted); *United States v. Johnston*, 559 F.3d 292, 294 (5th Cir. 2009) (citation omitted). Where a party fails to present an argument to the district court, however, this court reviews the sentencing objection for plain error.  *See United States v. Hughes*, 726 F.3d 656, 659 (5th Cir. 2013).  "If procedural error occurs, harmless error review applies." *United States v. Clay*,

## No. 17-30285

787 F.3d 328, 330 (5th Cir. 2015) (citation omitted). Commentary in the Guidelines Manual that interprets or explains a guideline "is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline." *United States v. Diaz-Corado*, 648 F.3d 290, 292 (5th Cir. 2011).

Stanford argues that the district court committed reversible error in its interpretation and application of the Guidelines for Count Two and, by extension, Count Three. Specifically, Stanford argues that the district court erred by: (1) failing to select the applicable guideline in the manner prescribed by the Guidelines; and (2) applying cross reference U.S.S.G. § 2N2.1(c)(2). We disagree.

### i.    *Selection of Applicable Guideline*

We first address Stanford's argument that the district court committed reversible error when purportedly bypassing selection of the most appropriate guideline in the manner instructed by U.S.S.G. §§ 1B1.1(a)(1) and 1B1.2(a).

The steps for determining the applicable guideline is not for this court to decide. That method is clearly set forth in the Guidelines. As this court recently reminded in *Grant*, the selection of the applicable guideline begins with reference to, first, the count of conviction, and, then, the Statutory Index.[4] *See* 850 F.3d at 209. The Statutory Index of the Guidelines provides the

---

[4] Although this circuit in *United States v. Principe*, 203 F.3d 849, 851 (5th Cir. 2000) explained that courts "generally" reference the Statutory Index to determine the applicable guideline, the plain language of U.S.S.G. 1B1.2(a) appears to command reference to the Statutory Index. *See Grant*, 850 F.3d at 220 n.2. ("The Guidelines instruct courts to '[r]efer to the Statutory Index . . . to determine the . . . offense guideline, referenced in the Statutory Index for the offense of conviction.'"). Opinions from other circuits lend support to the notion that reference to the Statutory Index should not be brushed aside. *See, e.g.*, *United States v. Almeida*, 710 F.3d 437, 441–42 (1st Cir. 2013); *United States v. Boney*, 769 F.3d 153, 160 (3d Cir. 2014); *United States v. Hochschild*, 442 F.3d 974, 977 (6th Cir. 2006); *United States v. Kupfer*, 797 F.3d 1233, 1244–46 (10th Cir. 2015).

No. 17-30285

applicable offense guidelines for various criminal statutes. *See* U.S.S.G. app. A (2016). In the simplest cases, a statute will have only one applicable guideline listed in the Statutory Index. Where, however, the Statutory Index provides more than one applicable guideline for a statute, the Guidelines instruct district courts to "determine which of the referenced guideline sections is most appropriate for the offense conduct charged in the count of which the defendant was convicted." U.S.S.G. 1B1.2(a) & cmt. n.1; *see also United States v. Principe*, 203 F.3d 849, 851 (5th Cir. 2000). While "the allegations in the indictment" serve as the critical piece "to [the] determin[ation] [of] whether the alleged offense more closely resembles [one guideline over the other]," *see, e.g.*, *Grant*, 850 F.3d at 219, 220 n.2., this court also employs the text of the potential guidelines and statute of conviction to assist in the inquiry. *Principe*, 203 F.3d at 851–53. In addition, this court considers the type of conduct that the statute was designed to punish. *Id.*

Stanford contends that the district court failed to follow the directions of U.S.S.G. §§ 1B1.1(a)(1) and 1B1.2(a) when selecting the applicable guideline, and, in doing so, improperly selected U.S.S.G. § 2N2.1 rather than U.S.S.G. § 2B1.1 as the offense guideline applicable to the offense of conviction—the misbranding conspiracy alleged in Count Two. Pointing to the conduct charged in the indictment, and this circuit's decision *United States v. Arlen*, 47 F.2d 139 (5th Cir. 1991), Stanford contends that U.S.S.G. § 2B1.1 was the most appropriate guideline selection because the conduct charged in the indictment for Count Two demonstrated a quintessential fraudulent scheme. This selection is particularly clear, Stanford argues, because the count charged a conspiracy to violate 21 U.S.C. § 331 "with the intent to defraud and mislead" the Food and Drug Administration (FDA) and without that allegation, a violation of the FDCA is a mere misdemeanor. The Government counters by arguing that because the indictment alleged that the sole object of the

6

conspiracy was to distribute misbranded drugs for profit, U.S.S.G. § 2N2.1 was the appropriate guideline selection. Count Two as a whole, the Government urges, charges a drug trafficking offense not a fraud offense. Significant to this contention is the incorporation of drug trafficking related allegations from Count One. The Government maintains that U.S.S.G. § 2B1.1 is not meant to address this sort of drug trafficking scheme involving mislabeled products, directing the court's attention to the guideline's enhancements and cross references.

For the reasons stated below, we agree with the Government that U.S.S.G. § 2N2.1 is the most appropriate guideline.

Count Two of the indictment charges conspiracy to introduce misbranded drugs into interstate commerce, in violation of 18 U.S.C. § 371 and 21 U.S.C. §§ 331, 333(a)(2). The Statutory Index for 18 U.S.C. § 371 lists various guidelines, including U.S.S.G. § 2X1.1. The district court selected 2X1.1, which sent the district court back to the guideline of the substantive offense—here, 21 U.S.C. §§ 331 and 333(a)(2). *See* U.S.S.G. § 2X1.1(a) (2016). Neither party objected to the district court's decision to use U.S.S.G. § 2X1.1(a). Similarly, the parties and the district court focused on Count Two as the substantive offense driving the calculation of the base offense level for the money laundering conspiracy conviction in Count Three.

21 U.S.C. § 331(a) prohibits introducing or causing to be "introduc[ed] into interstate commerce any . . . drug . . . that is adulterated or misbranded." 21 U.S.C. § 331(a). 21 U.S.C. § 333(a)(2) prescribes a penalty "of not more than three years or [a] fine[ ] not more than $10,000, or both" for violations of 21 U.S.C. § 331 "with the intent to defraud or mislead." 21 U.S.C. § 333(a)(2).

The Statutory Index for 21 U.S.C. § 333(a)(2), addressing, *inter alia*, punishment for violations of 21 U.S.C. § 331 with an intent to defraud or mislead, lists both U.S.S.G. § 2B1.1 and U.S.S.G. § 2N2.1 as potentially

applicable guidelines. *See* U.S.S.G. app. A (2016). The Statutory Index for 21 U.S.C. § 331(a) lists only U.S.S.G. § 2N2.1. *Id.*

The district court acknowledged many of the arguments Stanford advances on appeal and concluded that U.S.S.G. § 2N2.1 was appropriate when viewing Count Two alone. First, the district court stated that, "even if you confined yourself just to the language of the indictment in Count 2, it becomes clear that the underlying offense is the drug conspiracy." After Stanford himself raised the arguments he now raises on appeal, the district court responded "when we look to the indictment itself for Count 2, it contains the information that the Court has indicated, such that the Court is on sufficient notice as to what is the conspiracy." It is clear that the district court, when cabining its review to the allegations in Count Two, concluded that the fraud guideline did not adequately account for offense conduct charged in Count Two, and that it was not, as Stanford suggested, restricted to applying that guideline in light of *Arlen* and *Grant*. Instead, the district court selected U.S.S.G. § 2N2.1. Irrespective of the district court's approach, we independently conclude that U.S.S.G. § 2N2.1 was the most appropriate guideline.

Although the selection between U.S.S.G. § 2N2.1 or U.S.S.G. § 2B1.1 is not an issue of first impression, making the selection upon this factual backdrop appears rare. That is, the selection is typically made in cases that concern drugs generally regulated by the FDA rather than, as here, a CSA. *Cf. United States v. Ihenacho*, 716 F.3d 266, 276 (1st Cir. 2013) (selecting U.S.S.G. § 2B1.1 rather than U.S.S.G. § 2N2.1 in a case involving both controlled and non-controlled substances). Stanford argues that this distinction is not meaningful, reasoning that a non-compliant FDA-regulated drug is no different than a non-compliant controlled substance for purposes of this analysis. In light of the conduct charged in Count Two of the Indictment, we disagree.

No. 17-30285

Count Two of the Indictment alleges, in relevant part, that the FDA, in its authority as the regulator of drugs, as that term is defined by 21 U.S.C. § 321(g), ensures that drugs are, among other things, properly labeled for their intended uses before they can be legally marketed in interstate commerce. Count Two goes on to explain that the Federal Food, Drug, and Cosmetic Act ("FDCA") prohibits the manufacture, introduction or delivery for introduction, and receipt of misbranded drugs. Clarifying the meaning of misbranded, Count Two of the Indictment states that a drug is misbranded if the labeling was: (1) false and misleading; (2) lacked the name and place of business of the manufacturer; or (3) lacked adequate directions for use. Before proceeding to the conspiracy allegations, object of the conspiracy, and overt acts, Count Two of the Indictment incorporated paragraphs D through H of Count One. These paragraphs all related to the sale and manufacture of "Mr. Miyagi." The Conspiracy portion of Count Two of the Indictment alleges that Stanford and his cohorts, "with intent to defraud and mislead, did knowingly and intentionally combine . . . to [violate the FDCA] . . . [by] receiv[ing], manufactur[ing], packag[ing], hold[ing] for sale, distribut[ing], introduc[ing], and caus[ing] the introduction . . . drugs that were misbranded."

The object of the conspiracy, Count Two of the Indictment goes on to allege, was to "distribute . . . to consumers and other distributors, misbranded drugs for profit." Count Two of the Indictment ends with the listing of two overt acts that Stanford and co-conspirators took in furtherance of the conspiracy: (1) packaging Mr. Miyagi with a misleading "directions for use," "warning," and listing of wrong ingredients; and (2) advising individual franchise owners of Curious Goods L.L.C. on how to store, display, and sell the Mr. Miyagi products, how to detect and evade law enforcement, and how to respond to customers who asked questions about how to use the products and/or the physiological effects of the Mr. Miyagi products.

9

Upon this backdrop, the court is tasked with solving one principal question: what offense guideline accounts for the offense conduct charged in Count Two?

A review of the offense guidelines themselves are not dispositive, but U.S.S.G. § 2N2.1 appears a more natural fit. The background of U.S.S.G. § 2N2.1, notes that the guideline addresses "regulatory offense[s] that involved knowing or reckless conduct" while U.S.S.G. § 2B1.1's background notes that it "covers offenses involving theft, stolen property, property damage or destruction, fraud, forgery, and counterfeiting." *Compare* U.S.S.G. § 2N2.1 cmt. background (2016) *with* U.S.S.G. § 2B1.1 cmt. background (2016). Viewed in its entirety, U.S.S.G. § 2N2.1 is relatively straightforward providing for a base offense level, one specific offense characteristic, and two potential cross references—one where the offense involves fraud and the other where the offense was committed in furtherance of or to conceal another offense. *See* U.S.S.G. § 2N2.1 (2016). U.S.S.G. § 2B1.1 is, by comparison, more far reaching touching a wide variety of fraudulent behavior and providing four cross references—none having any clear applicability to the offense conduct charged in Count Two of the Indictment. *See* U.S.S.G. § 2B1.1 (2016).

The argument that Stanford advances on this issue essentially calls on this court to establish a *per se* rule mandating that district courts select U.S.S.G. § 2B1.1 wherever an intent to defraud or mislead is charged in conjunction with a violation of the FDCA. The argument fails for one simple reason: this court, under these circumstances, is not empowered to override the decision of the Sentencing Commission that both U.S.S.G. §§ 2N2.1 and 2B1.1 are appropriate guidelines where defrauding or misleading is charged. If the Sentencing Commission agreed with Stanford's approach, it could have simply provided that U.S.S.G. § 2B1.1 is the only applicable offense guideline

for violations of 21 U.S.C. § 333(a)(2).[5] Even taking Stanford's reasoning, essentially an elements-based approach to selecting the most appropriate guideline, misbranding was just as essential to the conviction as the alleged intent to defraud or mislead, and those allegations fit comfortably under U.S.S.G. § 2N2.1.[6]

Taking into account all the allegations of Count Two, the offense conduct charged in the indictment for Count Two demonstrates that the gravamen of the conduct charged was a violation of the FDCA for purposes of concealing the involvement with Mr. Miyagi. Targeting in on the focus of the offense conduct in Count Two, the scheme is one more aptly understood as evading the discovery of a CSA. Accordingly, a guideline that plainly permits such a consideration is most appropriate.[7] *See, e.g.*, *United States v. Hochschild*, 442 F.3d 974, 978 (6th Cir. 2006) (analyzing guideline cross references to determine the most appropriate guideline); *Ihenacho*, 716 F.3d at 276 (referencing U.S.S.G. § 2N2.1 cross reference in analysis of most appropriate guideline). U.S.S.G. § 2N2.1 is the most appropriate guideline.

Although Stanford waived the argument by raising it for the first time in his reply brief, the court rejects his argument that the alleged overt acts in Count Two were not relevant to the selection of the applicable guideline. *See*

---

[5] 21 U.S.C. § 333(a)(2) also addresses enhanced penalties where an individual is convicted of a second FDCA violation.  *See* 21 U.S.C. § 333(a)(2).  Nevertheless, the Sentencing Commission overwhelmingly prefers U.S.S.G. § 2N2.1 for FDCA violations and its inclusion of U.S.S.G. § 2B1.1 is merely a nod to the inclusion of the element of fraud.

[6] 21 U.S.C. § 333(a)(2) is the only FDCA related provision in the Statutory Index that does not provide U.S.S.G. § 2N2.1 as the solely applicable guideline. *See* U.S.S.G. app. A (2016).  21 U.S.C. §§ 331, 333(a)(1) and 333(b)(1)-(6) provide only U.S.S.G. § 2N2.1 as the applicable guideline. *Id.* 21 U.S.C. § 333(b)(7) only references U.S.S.G. § 2N1.1. *Id.*

[7] Naturally, there is some tension in adopting too broad a view of conduct charged given the ability to incorporate entirely unrelated portions of one count in an indictment into a different count.  That is particularly acute here given the Government's decision not to retry Count One. Nevertheless, reference to the Statutory Index is the limiting factor here. If the Sentencing Commission determined that selection of U.S.S.G. § 2N2.1 was a bridge too far, presumably the guideline would not be included as a potential choice.

No. 17-30285

*United States v. Aguirre-Villa*, 460 F.3d 681, 683 n.2 (5th Cir. 2006) ("[T]his Court will not ordinarily consider arguments raised for the first time in a reply brief."). The overt acts set forth in the indictment for Count Two were relevant to his offense of conviction, and accordingly relevant to the selection of the applicable guideline for that offense. Indeed, the district court instructed as much on the issue, differentiating the relevance of overt acts for the conviction on Count Two from the now reversed Count One conviction as well as the Count Three Conviction.[8] There is a meaningful distinction between the general federal conspiracy statute, 18 U.S.C. § 371, which requires the Government to prove an overt act, from the drug conspiracy statute, 18 U.S.C. § 846, which does not require proof of an overt act. *See United States v. Shabani*, 513 U.S. 10, 14–15 (1994).

Stanford advances various appellate decisions that he argues compel a different result. Although they both address guilty pleas rather than, as relevant here, jury convictions, *Ihenacho* and *Arlen* deserve individualized treatment.

In *Ihenacho*, the First Circuit affirmed the district court's selection of the fraud guideline in a case that alleged violations of both the FDCA and Controlled Substances Act based on the distribution of "both controlled substances *and* non-controlled substances." 716 F.3d at 270 (emphasis in original). The First Circuit explained that the indictment alleged an "intent to defraud and mislead," and rejected defendant's suggestion that the district court "should have ignored the indictment and instead focused on his version

---

[8] The district court provided that, with respect to the misbranding conspiracy, the government was required to prove that "one of the co-conspirators during the existence of the conspiracy knowingly committed at least one of the overt acts described in the superseding indictment in order to accomplish some object or purpose of the conspiracy. Unlike in Counts 1 and 3 of the superseding indictment, for this conspiracy, Count 2, the government must prove the commission of an overt act by a conspirator."

of the facts of the case." *Id.* at 276 (quotation marks omitted). That decision does not provide that the fraud guideline should be used whenever the intent to defraud and mislead is charged. Rather, the driving force of the court's decision in *Ihenacho* was the rejection of the defendant's futile argument that "the [district] court should have ignored the indictment" focusing instead on "his version of the 'facts of the case.'" *Id.* To the contrary here, a faithful application of the conduct charged in Count Two of the indictment leads to the conclusion that U.S.S.G. § 2N2.1 is the most appropriate guideline.

This circuit's decision in *Arlen* is less helpful to Stanford's case insofar as it is held out as foreclosing application of U.S.S.G. § 2N2.1 despite the indictment in this case. In *Arlen*, after a conviction for selling steroids to users and other dealers in violation of 21 U.S.C. §§ 331 and 333(a)(2)'s predecessor statute, the district court upwardly departed from U.S.S.G. § 2N2.1 to apply the fraud guideline—the Statutory Index had yet to include the fraud guideline for 21 U.S.C. § 333(a)(2). 947 F.2d at 141, 146. The panel affirmed the district court's selection of the fraud guideline, reasoning that the fraud guideline applied because fraud was the "defining characteristic" of both his conduct and the "black market world in which he conducted his illicit steroid business." *Id.* at 146. Rather than mandating use of the fraud guideline where an intent to defraud or mislead is alleged, *Arlen* provides that the selection was reasonable in light of the district court's conclusion that fraud was the defining characteristic of the offense conduct as alleged in the indictment. *See id.*

Notably, the decision in *Arlen* predated the inclusion of the cross reference in U.S.S.G. § 2N2.1 that permits a district court to apply a different guideline where the misbranding violation was committed in furtherance of or to conceal another offense. That cross reference was added in 1992. Indeed, at the time of *Arlen*, U.S.S.G. § 2N2.1 did not have any cross references and the current fraud cross reference was instead an application note in the

commentary of the guideline, directing that "[i]f the offense involved theft, fraud, bribery, revealing trade secrets, or destruction of property, apply the guideline applicable to the underlying conduct, rather than this guideline." U.S.S.G. § 2N2.1 cmt. n.1 (1991).

The holdings in *Ihenacho* and *Arlen* do not establish a *per se* rule. Nor could they do so without running afoul of the general principles guiding the selection of the applicable guideline. That is, consideration of the applicable guidelines listed in the Statutory Index followed by an individualized assessment of the offense conduct charged in the count of conviction.

We are mindful of the modified real-offense balance struck by the Sentencing Commission in adopting the tiered process of selecting the applicable guideline through conduct charged and tried for the statute of conviction and the consideration of broader conduct later when, among other things, applying cross references, Chapter Three adjustments, and Chapter Four's computation of a defendant's criminal history category. *See* Julie R. O'Sullivan, I*n Defense of the U.S. Sentencing Guidelines' Modified Real-Offense System*, 91 NW. U. L. REV. 1342, 1354–56 (1997) (offering compelling analysis of the Commission's efforts to refashion the Guidelines to address concerns of proponents of the opposing regimes). Count Two of the Indictment does not expressly exclude either offense guideline. There is an allegation of the intent to defraud—U.S.S.G. § 2B1.1. There is an alleged violation of the FDCA—U.S.S.G. § 2N2.1. Yet, this court cannot deny that the epicenter of the offense conduct charged in Count Two of the indictment concerns concealing Mr. Miyagi and the jury was charged with finding that one or both of the overt acts alleged occurred. Under these circumstances, U.S.S.G. § 2N2.1 was the most appropriate guideline. The district court did not err in concluding that the "gravamen" of the conduct charged in the indictment rendered U.S.S.G. § 2N2.1 the most appropriate guideline. *See Grant*, 850 F.3d at 220.

No. 17-30285

## *ii.     Selection of Cross Reference*

Stanford next argues that, even assuming the district court was correct in selecting U.S.S.G. § 2N2.1 as the most appropriate guideline, cross reference U.S.S.G. § 2N2.1(c)(2) does not apply because "offense" as that word is defined in the Guidelines requires two offenses of conviction—a requirement the Count One drug conspiracy could no longer satisfy. Because Stanford failed to raise the error before the district court, the court reviews the claim for plain error. *See Hughes*, 726 F.3d at 659.  Concluding that the district court did not commit plain error, we affirm the district court's selection of cross reference U.S.S.G. § 2N2.1(c)(2).

When the court is called to interpret the Guidelines, the typical rules of statutory interpretation are utilized.  *United States v. Koss*, 812 F.3d 460, 473 (5th Cir. 2016). Starting with the text of the relevant guideline or cross reference, the court uses "a plain-meaning approach" to interpret the Guidelines. *United States v. Mendez-Villa*, 346 F.3d 568, 570 (5th Cir. 2003) (per curiam). If the language is unambiguous, and does not lead to an "absurd result," the court's inquiry begins and ends with the plain meaning of that language.  *Koss*, 812 F.3d at 473. Nevertheless, the court "do[es] not disregard 'the cardinal rule that a statute is to be read as a whole, . . . since the meaning of statutory language, plain or not, depends on context.'" *United States v. Hoang*, 636 F.3d 677, 681 (5th Cir. 2011) (quoting *King v. St. Vincent's Hosp.*, 502 U.S. 215, 221 (1991)).

The cross reference at issue provides:

> If the offense was committed in furtherance of, or to conceal, an offense covered by another offense guideline, apply that other offense guideline if the resulting offense level is greater than that determined above.

U.S.S.G. § 2N2.1(c)(2) (2016).

No. 17-30285

Interpreting the cross reference, the district court turned to the Guidelines' definition of "offense" embodied in Application Note 1(H) of § 1B1.1. The Guidelines define "offense" as "the offense of conviction and all relevant conduct under § 1B1.3 (Relevant Conduct)." *See* U.S.S.G. § 1B1.1 cmt. n.1(H). The district court concluded that it was "not barred from considering the facts underlying the drug conspiracy if they [were] established by a preponderance of the evidence." After finding that the Count One drug conspiracy, including Stanford's knowledge, was established by a preponderance of the evidence, the district court applied U.S.S.G. § 2N2.1(c)(2) because "the Guidelines themselves direct the Court to apply the latter because it results in a greater offense level." *See* U.S.S.G. § 1B1.1(a) cmt. n.5 (2016). The district court's selection was not plain error.

To the issue of the necessity of a separate "offense of conviction," there appears to be little dispute that the first offense—referenced in "if the offense"—necessarily refers to an offense of conviction by operation of the "mechanical process" employed by the Guidelines. *See United States v. Boney*, 769 F.3d 153, 158 (3d Cir. 2014). *Cf. United States v. Kaluza*, 780 F.3d 647, 663 n.62 (5th Cir. 2015) ("In reading a statute, we must not look merely to a particular clause, but consider in connection with it the whole statute."). Stated differently, the offense referenced in "in the offense," by the nature of reaching an applicable guideline through reference to the statute of conviction, necessarily refers to an offense of conviction. *See* U.S.S.G. § 1B1.2(a) & cmt. n.1 (2016).

Stanford reads the cross reference as requiring two separate offenses of conviction—that is, the cross reference only applies "[i]f the offense [of conviction] was committed in furtherance of or to conceal, an offense [of conviction] covered" elsewhere in the Guidelines. Although Application Note 1 explains that all definitions are accorded "general applicability (except to the

16

extent expressly modified in respect to a particular guideline or policy statement)," the definition of "offense" comes with the proviso that it applies "unless a different meaning is specified or is otherwise clear from the context." U.S.S.G. § 1B1.1 cmt. n.1 & n.1(H).

The interpretation of the second instance of "offense" that Stanford advances conflicts with the more contextually relevant U.S.S.G. § 1B1.3 which instructs that, "[u]nless otherwise specified . . . cross references in Chapter Two . . . *shall* be determined on the basis of [relevant conduct]." U.S.S.G. § 1B1.3(a). (emphasis added). Commentary to 1B1.3 explains that, "*in the absence of more explicit instructions in the context of a specific guideline*," relevant conduct principles apply in the determination of cross references. U.S.S.G. § 1B1.3 cmt. background (emphasis added). There are no explicit instructions in this case.[9] And while "offense" is defined as an "offense of conviction and all relevant conduct," the definition does not apply if it is "*clear from the context*" in which it appears. U.S.S.G. § 1B1.1 cmt. n.1(H) (emphasis added). U.S.S.G. § 2N21.1, itself, does not specify a different meaning for "offense," but the plain language of the Guidelines also clearly envisions the application of cross references rising or falling on the basis of relevant conduct.

Defining the second instance of offense as it is used in U.S.S.G. § 2N2.1(c)(2)'s cross reference as constricted to a separate "offense of conviction" and that offense of conviction's relevant conduct does not comport with the reality that the term offense is being used in the context of a cross reference. *See, e.g.*, *United States v. Garcia*, 411 F.3d 1173, 1177 (10th Cir. 2005) ("The term 'offense,' as used in the cross-reference, includes both charged and uncharged relevant conduct." (citing *United States v. Tagore*, 158 F.3d 1124,

---

[9] Application Note 2 provides that 2N2.1(c)(2) "addresses cases in which the offense was committed in furtherance of, or to conceal, an offense covered by another offense guideline (e.g., bribery)."

1128 (10th Cir. 1998)). This context-specific distinction comports with U.S.S.G. § 1B1.5 which addresses cross references. Defining cross references as "an instruction to apply another offense guideline," 1B1.5 also provides that "[a] reference may direct that, if the conduct involved another offense guideline for such other offense is to be applied." U.S.S.G. § 1B1.5 cmt. n.3 (2016). In addressing those situations, application note 3 to U.S.S.G. § 1B1.5 provides that "[c]onsistent with the provisions of § 1B1.3 (Relevant Conduct), *such other offense includes* . . . conduct that occurred under circumstances that would constitute a federal offense had the conduct taken place within the . . . United States." *Id.* In other words, the commentary concerning offense in the context in which this court addresses it here plainly views the term as being consistent with relevant conduct principles.

Although the issue of whether U.S.S.G. § 2N2.1(c)(2) requires two separate offenses of conviction has yet to be addressed, several decisions addressing a different guideline are insightful.

In *United States v. Williams*, this circuit addressed an argument similar to one advanced by Stanford in the context of cross reference U.S.S.G. § 2C1.1(c)(1). *See* 332 F. App'x 937, 939–40 (5th Cir. 2009) (per curiam) (unpublished). U.S.S.G. § 2C1.1(c)(1) provides:

> If the offense was committed for the purpose of facilitating the commission of another criminal offense, apply the offense guideline applicable to a conspiracy to commit that other offense, if the resulting offense level is greater than that determined above.

*Id.* at 938.

The defendant in *Williams*, after pleading guilty to extortion affecting interstate commerce for his agreement to escort shipments of cocaine for cash payment, was sentenced under U.S.S.G. § 2D1.1 after the district court concluded that cross reference U.S.S.G. § 2C1.1(c)(1) permitted it to take into

account the conspiracy to commit drug trafficking. *Id.* The defendant argued that the cross reference only applies when the defendant has been convicted of a conspiracy, and that he could not conspire with an undercover agent. *Id.* at 939. The court explained that it was not relevant whether there was actually a conspiracy to commit the other offense, "but rather that the purpose of the [extortion] offense was to facilitate the commission of another criminal offense." *Id.* at 939–40. The court observed that it was sufficient that the defendant admitted at his sentencing hearing that he understood the purpose of his services to be to protect a shipment of cocaine. *Id.* at 939–40. Similarly, in *United States v. Solomon*, the Third Circuit, addressing whether "another criminal offense" required a charge or conviction, concluded that the "the Guidelines [did not] require . . . that [the defendant] *actually* facilitated another criminal offense." 766 F.3d 360, 364–65 (3d Cir. 2014) (emphasis in original). The "key word" to interpreting the cross reference, the panel explained, was "'purpose'—*i.e.*, the reason the defendant accepted the payments." *Id.* at 367 (emphasis in original).

The reasoning advanced by the panels in *Williams* and *Solomon* is compelling on this issue. In both instances, faced with reference to another criminal offense, the panels did not conclude that the generally applicable definition required that "another criminal offense" meant a criminal offense of conviction. In other words, the court concluded that the predicate for applying the cross reference was that the offense of conviction was "committed for the purpose of facilitating" another offense irrespective of a jury conviction on the other offense.

Extrapolating from that reasoning, the predicate for application of U.S.S.G. § 2N2.1(c)(2) is not necessarily another offense of conviction. Rather, it is sufficient that the offense for which the defendant is convicted—i.e., "the offense"—was committed "in furtherance of, or to conceal" another offense

19

regardless of whether there is a jury conviction on the other offense. These interpretations of the Guidelines comport with the context that the decision of a cross reference, unless explicitly instructed otherwise, is made on the basis of relevant conduct principles.

In light of the foregoing, the district court's selection of cross reference U.S.S.G. § 2N2.1(c)(2) was not plain error. *See, e.g.*, *United States v. Bishop*, 603 F.3d 279, 281 n.5 (5th Cir. 2010) ("An error is not plain 'unless the error is clear under current law' . . . [particularly where] [t]here are no published decisions in this Circuit that address [the issue]."). *Cf. United States v. Aderholt*, 87 F.3d 740, 744 (5th Cir. 1996) ("The error is evident from a plain reading of the statute and thus, is obvious.").[10]

***

In sum, the district court's resentencing of Stanford is affirmed. Because we find no reversible error in the calculation of Stanford's guideline for Count Two, we, by extension, affirm the sentence on Count Three as well.

## B. Denial of In Camera Review

Stanford next argues that this court should remand the case with instructions that the district court conduct in camera review of certain co-conspirator witness statements because those statements contain exculpatory *Brady* material concerning his knowledge that AM-2201 was a CSA.

To overcome *Stanford I*'s denial of his *Brady* claim for the same witness reports, Stanford argues that the issue of knowledge was made newly relevant by the decision in *Stanford I* and as such, he was not foreclosed from requesting the witness reports based on the argument that these reports might include

---

[10] Stanford does not advance a rule of lenity argument on appeal nor do we conclude that he could successfully do so. *See United States v. Buck*, 847 F.3d 267, 277 n.43 (5th Cir. 2017) (explaining that use of the term location within the Guidelines "d[id] not have the kind of 'grievous ambiguity' that implicates the rule of lenity.").

exculpatory information related to his knowledge that AM-2201 was a CSA. The Government contends that Stanford is precluded from re-litigating *Stanford I*'s holding that he failed to establish a colorable *Brady* claim. We agree with the Government and hold that Stanford was not entitled to renew his *Brady* claim on remand.

When a case is remanded for resentencing, district courts in this circuit are not permitted to provide parties "a second bite at the apple" by holding a de novo resentencing as a matter of course. *United States v. Marmolejo*, 139 F.3d 528, 531 (5th Cir. 1998) ("*Marmolejo II*"). Rather, courts are confined to addressing "discrete, particular issues directed by the court," or those that "aris[e] out of" or become "newly relevant" because of the appeal. *Id.* at 530, 531 (citation omitted); *United States v. Lee*, 358 F.3d 315, 325 (5th Cir. 2004) ("*Lee II*"). In that vein, this circuit instructs district courts to faithfully apply the "waiver" doctrine by discerning whether an issue raised after a remand is one that could have been, but was not, raised during the original appeal. *See Med. Ctr. Pharm. v. Holder*, 634 F.3d 830, 834 (5th Cir. 2011) (explaining that "[law-of-the-case] rule . . . is qualified by the waiver doctrine, which holds that an issue that could have been but was not raised on appeal is forfeited and may not be revisited by the district court on remand."). The doctrine, aimed at addressing a "party's inaction[,]. . . . promotes procedural efficiency and prevents the bizarre result that a party who has chosen not to argue a point on a first appeal should stand better as regards the law of the case than one who had argued and lost." *Lindquist v. City of Pasadena*, 669 F.3d 225, 239–40 (5th Cir. 2012) (internal quotation marks omitted). The district court's reasoning on remand, namely, not relying on the waiver doctrine in ruling on the request for in camera review, does not preclude this court's consideration of the waiver doctrine. *See Art Midwest, Inc. v. Clapper*, 805 F.3d 611, 614 (5th Cir. 2015)

21

(recognizing that district court's stated rationale does not "limit this court's ability to consider waiver").

*Stanford I* addressed whether Stanford was entitled to purported *Brady* material of Dan Francis, Boyd Barrow, Drew Green, and Joshua Espinoza, namely DEA witness reports or agent notes about any meetings with them. These are the same reports Stanford now seeks here.

In keeping with his counsel's argument at the original appeal that the case was a "trial by ambush," Stanford argued to the *Stanford I* panel that he did not have any of the DEA witness reports or rough notes of the interviews with these witnesses to use to impeach them. According to Stanford, these documents would have demonstrated a shifting story by his co-defendants and provided him with an opportunity to impeach their credibility as well as the veracity of their testimony.

Addressing these arguments, the *Stanford I* panel wrote extensively on the *Brady* issue in its published decision, dedicating five paragraphs to the issue and concluding that Stanford misapprehended this circuit's *Brady* jurisprudence. *Stanford I*, 823 F.3d at 841–42. The panel observed that Stanford did not "appear to have requested in camera review of specific documents for *Brady* purposes." *Id.* at 842. Armed with the court's opinion and a reversal on Count One, Stanford renewed his request for *Brady* material on remand. In Stanford's reply before the district court, he requested that the district court conduct an in camera review of the documents. The district court issued an order rejecting Stanford's request.

The law-of-the-case doctrine and its related waiver doctrine leads us to conclude that Stanford's *Brady* claim is forfeited because the issue was germane to the case prior to and during the appeal and he failed to raise it during that time.

Stanford, citing to *Lee II*'s "newly relevant" language, argues that "knowledge did not become a material issue until remand." *Lee II* offers little assistance to the Stanford's revival of this *Brady* claim. In *Lee II*, the court concluded that the waiver doctrine did not preclude consideration of an upward departure that "was not appealable" as a matter of law during the original appeal. 358 F.3d at 324 ("We find that the record in this case amply justifies the government's earlier silence quite simply because the enhancement at issue was not appealable in the initial appeal."). Quite differently, Stanford's *Brady* claim on the basis of his knowledge that AM-2201 was a CSA was both legally permissible and relevant to the original district court proceedings and appeal.

To be sure, *Stanford I* did clarify the precise relation that knowledge had to Count One. Nonetheless, knowledge was the star issue in the district court proceedings and on appeal, leading to a reversal in part.[11] The dispute concerning whether Stanford knew AM-2201 was a CSA was not ancillary to the original district court proceedings and appeal. The parties briefed the issue in great detail. Indeed, *Stanford I* detailed the district court's permission of knowledge-related evidence at trial despite the district court's conclusion that it was not an element of the Count One charge.[12] *See Stanford I*, 823 F.3d at 826–27. As the foregoing demonstrates, Stanford had ample reason to make a *Brady* claim argument centered on his knowledge that AM-2201 was a CSA.

With the knowledge issue resolved successfully and the *Brady* claim resolved unsuccessfully by this court in *Stanford I*, Stanford essentially attempts to revive the latter using the former. Stanford, at least, had incentive

---

[11] Stanford's briefing on the original appeal conceded as much: "The most hotly contested fact in this case—and the element on which the government's evidence was weakest—was whether Stanford knew that AM-2201 was a CSA."

[12] Stanford's resentencing briefing noted that "approximately 90% of the trial dealt with Count One."

to argue the knowledge issue with respect to his *Brady* claim on the basis of impeachment value. Stanford essentially argues that analysis by this court adding layers of argument to an issue on appeal, opens that issue up for review again on remand. That rationale does not comport with this circuit's waiver doctrine. *See, e.g., Serna v. Law Office of Joseph Onwuteaka, PC.*, 614 F. App'x 146, 156 (5th Cir. 2015) (per curiam) (unpublished) (explaining that "new legal argument" on remand concerning an issue that was previously decided was "plainly foreclosed by the law-of-the-case doctrine and the related doctrine of waiver").

As this court has explained, "[i]n short, nothing prevented . . . [Stanford], in [his] appeal in [*Stanford*] *I*, from arguing that the" Government's failure to turn over DEA witness reports would be necessary to potentially impeach witness testimony concerning his knowledge that AM-2201 was a CSA. *Lindquist*, 669 F.3d at 240. Stated plainly, Stanford could have brought, and had sufficient incentive to raise, a *Brady* claim at the district court and on appeal prior to remand on the basis of their purported value to his knowledge that AM-2201 was a CSA.[13] *Id.* at 239–40.

## C. Reassignment

Primarily pointing to statements made during trial concerning the handling of exhibits, Stanford argues that the district court has a set opinion of him that renders the district court incapable of rendering an unbiased opinion going forward.

An "extraordinary" and "rarely invoked" power, reassignment to a different judge on remand turns on more than intemperate remarks. *See*

---

[13] Stanford does not brief, nor does the record implicate, any of the applicable exceptions justifying departure from the waiver doctrine with respect to his *Brady* claim. *See Med. Ctr. Pharm.*, 634 F.3d at 836 ("Only plain error justifies departure from the waiver doctrine."); *Demahy v. Schwarz Pharma, Inc.*, 702 F.3d 177, 184 (5th Cir. 2012) (listing three exceptions to mandate rule and law of the case doctrine).

*Johnson v. Sawyer*, 120 F.3d 1307, 1333 (5th Cir. 1997). "[R]eassignments should be made infrequently and with the greatest reluctance." *United States v. Winters*, 174 F.3d 478, 487 (5th Cir. 1999) (quotation marks and citation omitted). Because we conclude that this court's supervisory power to reassign a matter is coterminous with the necessity of a remand, we need not reach the issue. *See* 28 U.S.C. § 2106.

Even if we did so, the record in this case does not support reassignment. The standard for reassignment presents a high hurdle—a hurdle that Stanford fails to clear. Stanford's decision to proceed pro se at trial placed him at the center of ordinary case management by a trial court judge and that case management is not sufficient to warrant reassignment. *See, e.g.*, *Gomez v. St. Jude Med. Daig Div. Inc.*, 442 F.3d 919, 939 (5th Cir. 2006) (noting that district court judge's "annoy[ance] with counsel at times . . . [that was] not without reason]" failed to justify reassignment on remand").

Viewed in its entirety, Stanford's claim for reassignment centers on the district court's rulings against him at trial, sentencing, and resentencing. The most noteworthy statement by the district court came during its ruling on an obstruction of justice enhancement at Stanford's sentencing hearing in which she expressed forward-looking skepticism about his veracity in putting evidence before the court. Crediting this statement by the district court at Stanford's original sentencing as a basis for reassignment would be inappropriate in light of the district court's fairhanded, thorough handling of the thorny issues before it at the subsequent resentencing hearing. The request is denied.

## III.   CONCLUSION

For the foregoing reasons, Stanford's sentence on Counts Two and Three and the district court's denial of Stanford's *Brady* claim without conducting in

camera review is AFFIRMED. Stanford's request for reassignment to a different district court judge is DENIED.