# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

November 6, 2023

Lyle W. Cayce
Clerk

_____

No. 22-50857

_____

United States of America,

*Plaintiff—Appellee,*

*versus*

Shannon Wilson,

*Defendant—Appellant.*

_____

Appeal from the United States District Court
for the Western District of Texas
USDC No. 1:22-CR-78-1

_____

Before Wiener, Willett, and Douglas, *Circuit Judges*.

Per Curiam:[*]

Shannon Wilson pleaded guilty to being a felon in possession of a firearm. Because Wilson possessed the firearm in connection with a drug-trafficking offense, the Sentencing Guidelines required the district court to sentence him under the Guideline for the drug offense, which it did. Using the gross weight of the seized methamphetamine pills, the district court

_____

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 22-50857

sentenced Wilson to 110 months' imprisonment and 3 years' supervised release.

On appeal, Wilson challenges the district court's drug-quantity calculation. He says that the district court erroneously calculated his sentence by using the gross weight of the methamphetamine pills rather than estimating the weight of the actual methamphetamine in each pill. We disagree and affirm.

I

Wilson, known to police as a suspect in several firearms-related crimes, was pulled over for driving without a valid driver's license. During the stop, police discovered a loaded 9-millimeter pistol and a large bag of orange pills. The bag had 954 whole pills, 33 partial pills, and orange powder—totaling 361.93 grams. Laboratory analysis later confirmed that the pills contained methamphetamine.

Wilson was charged with and pleaded guilty to one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1).[1] Because he possessed the firearm in connection with a drug-trafficking offense, the presentence investigation report (PSR) applied § 2D1.1 of the Sentencing Guidelines to calculate his sentence.[2] Using the gross weight of the pills—361.93 grams—the PSR assigned Wilson a base offense level of 28. *See*

---

[1] The Government did not pursue a drug charge.

[2] Generally, § 2K2.1 of the Sentencing Guidelines applies to § 922(g)(1) felon-in-possession offenses. *See* U.S.S.G. App. A. But when a defendant uses or possesses the firearm in connection with the commission of another offense, a cross-reference to § 2X1.1 applies "if the resulting offense level is greater than" the one appliable under § 2k2.1. *Id.* § 2K2.1(c)(1)(A). The base offense level under § 2X1.1 is the "base offense level from the guideline for the substantive offense, plus any adjustments from such guideline." *Id.* § 2X1.1(a). Wilson does not challenge the application of the cross-reference or that his firearm offense was connected to an 18 U.S.C. § 841(a)(1) drug-trafficking offense.

No. 22-50857

U.S.S.G. § 2D1.1(a)(5), (c)(6). The PSR then added two levels for Wilson's gun possession, *see id.* § 2D1.1(b)(1), and deducted three levels for Wilson's acceptance of responsibility, bringing his total offense level to 27. Wilson's criminal history of VI produced a Guidelines range of 130 to 162 months' imprisonment. But because the statutory maximum punishment was 120 months, the Guidelines recommended that sentence.

Wilson filed a written objection to the PSR, challenging its calculation of his base offense level. He argued that, because the seized methamphetamine was in pill form, his sentence should have been calculated using the Typical Weight Per Unit Table in application note 9 rather than the Drug Quantity Table in § 2D1.1(c). Had the PSR applied the Per Unit Table, Wilson's total offense level would have been 21, producing a Guidelines range of 77 to 96 months.[3]

Wilson also filed a sentencing memorandum. He reiterated his objection to the PSR and alternatively requested a downward variance. The Government filed a written response, arguing that the PSR correctly calculated Wilson's sentence using the Drug Quantity Table. It reasoned that, because the pills had been weighed, the Per Unit Table did not apply to Wilson's case because the table applies only when the weight of the controlled substance is unknown. Wilson renewed his objection at sentencing.

The district court overruled Wilson's objection but granted a downward variance, imposing a below-Guidelines sentence of 110 months of

---

[3] The Per Unit Table assigns actual methamphetamine an estimated weight of 5 milligrams per pill, capsule, or dose. U.S.S.G. § 2D1.1, cmt. n.9. Five milligrams, multiplied by 954 seized pills is 4.8 grams of pure methamphetamine, producing a base offense level of 22. *Id.* § 2D1.1(c)(9).

imprisonment followed by 3 years of supervised release. Wilson timely appealed his sentence.

## II

We review the district court's factual findings for clear error and its interpretation and application of the sentencing guidelines de novo. *United States v. Ferris*, 52 F.4th 235, 239 (5th Cir. 2022).

## III

Wilson's challenge requires us to interpret the Guidelines' text. He argues that the plain language of application note 9 specifies that the court must use the Per Unit Table when a defendant is sentenced for possessing methamphetamine in pill form.

We apply the typical rules of statutory interpretation to the Sentencing Guidelines. *United States v. Stanford*, 883 F.3d 500, 511 (5th Cir. 2018). We start with the Guideline's text. *Id.* "If the language is unambiguous, and does not lead to an 'absurd result,' [our] inquiry begins and ends with the plain meaning of that language." *Id.* (citing *United States v. Koss*, 812 F.3d 460, 473 (5th Cir. 2016)). Like statutes, we read the Guidelines as a whole "since the meaning of statutory language, plain or not, depends on context." *Id.* (quoting *United States v. Hoang*, 636 F.3d 677, 681 (5th Cir. 2011)). "[C]ommentary in the Guidelines Manual that interprets or explains a guideline is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline." *Stinson v. United States*, 508 U.S. 36, 38 (1993); *accord United States v. Cortez-Gonzalez*, 929 F.3d 200, 204 (5th Cir. 2019); *United States v. Choulat*, 75 F.4th 489, 494 (5th Cir. 2023).

A

First, some background. For drug crimes, a defendant's base offense level is generally calculated by referencing the Drug Quantity Table in § 2D1.1(c). U.S.S.G. § 2D1.1(a)(5). The Drug Quantity Table assigns offense levels based on the type and weight of the drugs involved. *Id.* § 2D1.1(c)(1)–(17). Except when "otherwise specified," the table uses "the entire weight of any mixture or substance containing a detectable amount of the controlled substance." *Id.* § 2D1.1(c), n.(A).

As to methamphetamine, the table distinguishes between "methamphetamine (actual)"—which is the weight of the methamphetamine itself—and the mixture or substance containing methamphetamine. *Id.* § 2D1.1(c), n.(B). "In the case of a mixture or substance containing . . . methamphetamine," the Guidelines directs courts to "use the offense level determined by the entire weight of the mixture or substance, or the offense level determined by the weight of the . . . methamphetamine (actual), whichever is greater." *Id.*

This appeal is about the relationship between § 2D1.1(c) and application note 9. That note applies when "the number of doses, pills, or capsules" is known but "the weight of the controlled substance" is not. *Id.* § 2D1.1, cmt. n.9. In those cases, application note 9 directs courts to "multiply the number of doses, pills, or capsules by the typical weight per dose" in the Per Unit Table "to estimate the total weight of the controlled substance." *Id.* But application note 9 cautions courts not to use the "table if any more reliable estimate of the total weight is available from case-specific information." *Id.* And, for the substances marked with an asterisk, including methamphetamine, the table further warns that it "provides a very conservative estimate of the total weight." *Id.* § 2D1.1, cmt. nn.9 & 9*.

B

Wilson acknowledges that the general rule for calculating drug quantity under § 2D1.1(c) is to use the weight of the mixture or substance containing a detectable amount of the controlled substance. But he contends that application note 9 creates an exception to this general rule. He argues that when, as here, methamphetamine is in pill form, § 2D1.1(c) does not apply at all because the Per Unit Table in application note 9 estimates the quantity of actual methamphetamine rather than the mixture or substance containing methamphetamine. *See id.* § 2D1.1, cmt. n.9. Otherwise, he argues, application note 9 would be superfluous. We disagree.

1

Application Note 9 is not an exception to the general mixture-or-substance rule. First, by its plain terms, application note 9 applies only when the "weight of the controlled substance" is unknown. *Id.* That is not the case here.

Wilson tries to get around this fact by arguing that the first sentence of application note 9 redefines "weight of the controlled substance" to mean the amount of the *actual* controlled substance. Recall, the first sentence of application note 9 says, "If the number of doses, pills, or capsules but not the *weight of the controlled substance* is known, multiply the number of doses, pills, or capsules by the typical weight per dose in the table below to estimate the *total weight of the controlled substance*." *Id.* (emphasis added).

In support of this argument, Wilson says that we must use the definition of "controlled substance" from 21 U.S.C. § 802(6). That section defines "controlled substance" as "a drug or other substance . . . included in schedule I, II, III, IV, or V of part B of this subchapter." 21 U.S.C. § 802(6). But this argument ignores Note A to the Drug Quantity Table, which explains that "the weight of a controlled substance set forth in the table refers

to the entire weight of any mixture or substance containing a detectable amount of the controlled substance." U.S.S.G. § 2D1.1(c), n.(A). We must construe application note 9 in light of this rule because application note 9 is not part of the Guidelines. "Like all other application notes, it serves to 'interpret the guideline[s] or explain how [they are] to be applied.'" *United States v. Shabazz*, 933 F.2d 1029, 1032 (D.C. Cir. 1991) (alteration in original) (quoting U.S.S.G. § 1B1.7).

Additionally, the Per Unit Table itself follows the general mixture-or-substance rule. For each drug, the table provides the estimated typical mixture weight per pill. The table departs from this general rule only for seven controlled substances marked with an asterisk. For those marked substances, "the weight per unit shown is the weight of the *actual* controlled substance, and not generally the weight of the mixture or substance containing the controlled substance." U.S.S.G. § 2D1.1, cmt. n.9.

True, methamphetamine is marked with an asterisk, which means that the table estimates the weight of the actual methamphetamine per pill. But recall that the Drug Quantity Table provides different offense levels for methamphetamine based on mixture-or-substance weight and methamphetamine based on actual weight. *Id.* § 2D.1.1(c). Application note 9 merely expresses the Guideline's preference that, when the *mixture weight* of methamphetamine is unknown, courts must estimate the total weight based on the *actual* weight of the methamphetamine per pill. As one of our sister circuits explained, this "simply reflects the Commission's judgment that the per-unit weight of the relevant mixture or substance [containing methamphetamine] cannot be estimated with sufficient precision

so as to justify using the preferred approach" of using mixture weight.[4] *See Shabazz*, 933 F.2d at 1034.

2

Nor is application note 9 superfluous. For it to apply, two conditions must be met: (1) the weight of the pills is unknown and (2) no more reliable estimate is available. *See* U.S.S.G. § 2D1.1, cmt. n.9. Neither is met here.

First, as the Government notes, Wilson relies on an assumption not true in every case—that all pills constituting relevant conduct have been seized and weighed. In many cases, the overall drug quantity attributable to a defendant is not based on seized drugs alone. *Id.* § 2D1.1, cmt. n.5 ("Types and quantities of drugs not specified in the count of conviction may be considered in determining the offense level."). Application note 5 directs courts to approximate drug quantities using other evidence when "there is no drug seizure[,] or the amount seized does not reflect the scale of the offense."[5] *Id.*; *see also United States v. Valdez*, 453 F.3d 252, 267 (5th Cir. 2006) ("The court may extrapolate the quantity from any information that has sufficient indicia of reliability to support its probable accuracy, including

---

[4] Wilson does not argue, nor can he, that anything in § 2D1.1(c) *requires* courts to use the actual weight of methamphetamine when the mixture weight is available. Instead, when there is evidence of mixture weight and actual weight, the court must use "whichever is greater." U.S.S.G. § 2D1.1(c), n.(B).

[5] Wilson contends that the connection to application note 5 is "untenable" because the notes do not work together or state that they work in step. But we decline his invitation to read application note 9 in isolation. We must read statutory language in context. *Chamber of Com. of U.S. of Am. v. U.S. Dep't of Lab.*, 885 F.3d 360, 372 (5th Cir. 2018) ("[S]tatutory language cannot be construed in a vacuum. It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." (alteration in original) (quoting *Davis v. Mich. Dep't of Treasury*, 489 U.S. 803, 809, (1989))).

a probation officer's testimony, a policeman's approximation of unrecovered drugs, and even hearsay." (internal quotation marks and citation omitted)).

And second, application note 9 prohibits the use of the Per Unit Table "if any more reliable estimate of the total weight is available from case-specific information." U.S.S.G. § 2D1.1, cmt. n.9. Our sister circuits agree that evidence of mixture weight—when available—is more reliable than an estimate from the Per Unit Table. *See, e.g.*, *United States v. Roche*, 415 F.3d 614, 619 (7th Cir. 2005) (holding that the district court properly estimated drug weight based on the actual weight of recovered ecstasy tablets because "the defendant is responsible for the weight of the whole pill, not just the active ingredient"); *United States v. Tracy*, 989 F.2d 1279, 1287 (1st Cir. 1993) (rejecting the defendant's argument that the court should have used the Per Unit Table because "the table produces conservative estimates that, among other things, do not account for the weight of the 'mixture or substance' that should be included in calculating the amount of LSD for sentencing"); *United States v. Martz*, 964 F.2d 787, 790 (8th Cir. 1992) (holding that the district court did not err by using an estimate from the lightest known dose instead of the Per Unit Table). In this case, there is no need to rely on an estimate because the weight of the pills is known and undisputed.

Wilson resists this conclusion by relying heavily on our decision in *United States v. Tushnet*, 526 F.3d 823 (5th Cir. 2008). But *Tushnet* is not to the contrary. In *Tushnet*, the defendant accepted responsibility for 45,331 MDMA pills. *Id.* at 823. The DEA tested 5,000 of those pills and determined that each pill contained 100 milligrams of *actual* MDMA. *Id.* at 824. But the weight of the other 40,000 pills was unknown. In calculating Tushnet's sentence, the district court consulted the Per Unit Table and used the presumed typical weight of 250 milligrams per pill rather than the 100-milligram figure. *Id.* We affirmed.

*Tushnet* does not help Wilson. For one, unlike in *Tushnet*, the weight of all the pills that Wilson is responsible for is known, so there is no reason to consult application note 9 for an estimate. And, contrary to Wilson's assertion, *Tushnet* did not establish a general rule that courts *must* use the table when pills are involved. Rather, we held that the district court did not err by using the table in that case. True, *Tushnet* concerned MDMA, which is not asterisked in the Per Unit Table. For Tushnet's sentence, this meant that the weight of the actual MDMA was irrelevant. But, as we previously explained, it does not help Wilson that methamphetamine is asterisked. And here, even if the court estimated the amount of actual methamphetamine using the table, it would still have to use the mixture weight because that measure produces a higher offense level. U.S.S.G. § 2D1.1(c), n.(B) ("In the case of a mixture or substance containing . . . methamphetamine," the court must "use the offense level determined by the entire weight of the mixture or substance, or the offense level determined by the weight of the . . . methamphetamine (actual), whichever is greater.").

## IV

Application note 9 does not apply to Wilson's case—the weight of Wilson's methamphetamine pills was known and more reliable than the hypothetical weight from the Per Unit Table. Because the plain language of application note 9 does not create an exception to the general mixture-or-substance rule, the district court did not err by sentencing Wilson based on the gross weight of his methamphetamine pills.

Accordingly, we AFFIRM.